[Crim. No. 1195.   Department Two.—August 3, 1905.]

# THE PEOPLE, Respondent, v. ROBERT BLACK, Appellant.

CRIMINAL LAW — CHILD-STEALING — GIST OF OFFENSE — INTENT.—The gist of the offense of child-stealing consists of the taking and enticing away of a minor child with intent both to detain and to conceal such child from the person having legal charge of it. If either intent is lacking, the offense is not made out.

ID.—INTENT TO DETAIN AND CONCEAL CHILD—QUESTION OF LAW—INSUFFICIENCY OF EVIDENCE—REVERSAL.—Where all of the evidence is in the record, and is without conflict, and wholly fails to show any intent of the defendant both to detain and to conceal the child, or any evil intent, a question of law is presented, and a reversal will be ordered for insufficiency of the evidence to sustain the verdict.

APPEAL from a judgment of the Superior Court of Napa County and from an order denying a new trial.   Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Bell, York & Bell, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

LORIGAN, J.—The defendant was indicted and convicted of child-stealing, under section 278 of the Penal Code, which provides that, "Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable," etc.

He was sentenced to ten years in the state prison, and appeals from the judgment and order denying his motion for a new trial.

The defendant, a divorced man, aged about forty-three years, was employed in a livery stable at St. Helena, Napa County, where the offense of which he was convicted is alleged to have been committed.   There also resided at the same city

a Mrs. Yeamans and her daughter, Dottie Higgins, the latter
a girl sixteen years of age, of rather willful and headstrong
disposition, and who had as a companion another girl named
Mattie, slightly older, but also a minor, and of equally willful
inclination. The defendant had known Dottie Higgins for
several years, and, to give the substance of his own testimony,
had, some three months prior to October 12, 1903, become very
well acquainted with her; going with her off and on,—that is,
meeting her; took her driving once; met her at different times
on the streets of St. Helena. Their relations were very
friendly. He was paying his attentions to her, and was in
love with her.

The girl Dottie seems to have been self-willed, impatient of
parental restraint, and much disposed to stroll about the
streets of St. Helena of evenings. She had for a couple of
years been employed as a domestic in several places in the
vicinity of her home, refusing to go to school, and preferring
to work rather than remain at home, claiming that she could
not get along with her stepfather. When not working out she
stopped with her mother at St. Helena; sometimes with her
grandmother at Napa City.

It does not appear that the defendant had any acquaintance
with the girl's mother or stepfather, and he had never visited
her at her home.

Early on Monday evening, October 12, 1903, the girl Dottie
met the defendant on one of the streets of St. Helena, and
requested him to take her in his buggy to the residence where
her friend Mattie was stopping. He did so, Mattie was called
out, and the three proceeded for a drive. Her object in call-
ing on Mattie was to have her accompany her to Napa that
night. While out driving Dottie stopped at her home and
told her mother she was going to return to her grandmother's
at Napa City that evening with a young man with whom she
had come over from her grandmother's to St. Helena that day.
Her mother consented, and Dottie, leaving the house ostensibly
for the purpose of returning to Napa, resumed her drive with
defendant and Mattie. After driving around some time,
Dottie asked the defendant to take them to Napa City that
night, so that they might take the train to San Francisco. The
girls had made up their minds to go to San Francisco; they
had made an effort a week or so previously to get to San

Francisco; they had no definite object in view in going there; it was Dottie's desire to go anywhere where she would be away from home. The defendant had heard the girls talking about going to San Francisco, and Dottie had told him that her mother said she could not remain at home because her stepfather did not want her there. Defendant promised to take them to Napa as requested, and to carry out his promise left the girls at Mattie's residence while he drove back to the stable to get a double team. He shortly returned with the team, but instead of taking the girls to Napa City proceeded with them to a summer resort on Howell Mountain, some eleven miles distant from St. Helena. Arriving there about two o'clock in the morning, he awakened the proprietor and his family, with whom he was acquainted, told them he had brought up a couple of guests, and when one of the ladies of the family came out to receive the girls he immediately started back for St. Helena. On the way up to the resort he gave both of the girls some money to pay their expenses while there, they having told him they had no money for the purpose, and promised to return and visit them the following Wednesday.

When the defendant returned to the stable that night he met a deputy constable and night watchman, who seems to have known that the defendant had driven away with the girls, because he asked him what he had done with them, and defendant told him he had taken them to the summer resort at Howell Mountain, naming the place.

On the following Wednesday defendant heard that a complaint had been made before the justice of the peace at St. Helena charging him with having taken the girl Mattie away, and he called at the office of the justice to learn if this was a fact. The justice told him that no complaint had been sworn to, but that it was rumored that he had taken the girls to Napa and sent them to San Francisco. The defendant denied this, saying he had taken the girls to a respectable place, and left them there, as any one else would have done, and that they could get away any time they pleased, and could be had at any time they were wanted. The justice did not ask where he had left them, and defendant did not tell him.

On the same day he met Dottie's mother, who asked him if he knew where her daughter was, and he told her he had

taken her to Napa on the Monday night previous, at her re-
quest, left her near her grandmother's residence, and had
immediately returned to St. Helena; that he had not seen or
heard of her since, and knew nothing of her whereabouts, or
of Mattie's.

That same evening he drove up to visit the girls at the sum-
mer resort, as he had promised, remaining there a couple of
hours talking with them on the porch. This was the only visit
he made.

On the following Saturday afternoon the girls obtained a
buggy and drove from the summer resort some distance to a
telephone station and telephoned the defendant at the stables
where he was employed to send up a conveyance to take them
home, as they wished to return. He promised to do so, but
before he could do it was arrested on a complaint made by
Dottie's mother charging him with having taken, detained,
and concealed her daughter. He, however, arranged that a
conveyance from the stable should be sent up for the girls,
which was done, and the girls returned to St. Helena in it
that evening.

Upon the trial defendant admitted taking the girls to the
summer resort at Howell Mountain, stating that they wanted
him to take them to Napa City, so that they might go to San
Francisco; that as they seemed bent on going to San Fran-
cisco, he persuaded and coaxed them to abandon their trip to
that city, and suggested that they go to the summer resort
at Howell Mountain instead, as he did not want them to go
to San Francisco; that they agreed to do so, and he took
them there; that his reason for so persuading the change was
that he thought a good deal of the girl Dottie and wanted her
to do well; that he did not tell the girl's mother where he
had taken her daughter when she asked him because he had
promised Dottie that he would not do so.

The evidence in the case further showed affirmatively that
the defendant was a man who had always borne a good repu-
tation in the community; that the summer resort to which he
had taken the girls was a proper and respectable place, man-
aged and conducted by a respectable family; that no restraint
of any kind was imposed upon the girls, nor was it suggested
when the defendant left them there with the proprietor and
his family that any surveillance should be placed upon them;

that there was no understanding between the girls and defendant that they should remain there for any definite period. In fact, it was understood they should leave there whenever they wished to do so. The girls made their own arrangements for their accommodations at the resort and settled their accounts before departure; they were at entire liberty to depart from and return to the resort as they saw fit, and, in fact, strolled about the country as their inclinations prompted; that a stage passed the resort daily to St. Helena, and they had the means to procure passage thereon, if they saw fit or wished to leave.

The testimony of the girl Dottie clearly shows that she went to the resort of her own volition, at the suggestion of the defendant that she go there instead of to San Francisco; that nothing was said to her by defendant which would indicate an intention on his part to detain or keep her there, nor was she detained; that she went with the expectation of remaining there just as long as she chose to do so, and with the intention of returning to St. Helena whenever she pleased, and that when she got ready she did return.

There was no suggestion of any improper relations between the defendant and either of the girls, or that any sinister motive for taking them to the summer resort existed on the part of defendant, or that in taking them there he was prompted by any other motive than a wish to prevent the girls from going to San Francisco, as they had announced their intention of doing.

This is a substantial statement of the evidence in the case.

As grounds for a reversal it is urged, among other things, that the evidence in the case was insufficient to sustain the verdict of the jury, and we are of the opinion that this latter ground is well taken.

It will be observed from the provisions of the section of the Penal Code under which the defendant was prosecuted that the gist of the offense consists of the taking and enticing away of a minor child "with intent to detain and conceal such child" from its parent, guardian, or other person having lawful charge of it. In a prosecution under this section it is not enough to show that there was an intent to conceal the minor, but the intent must be accompanied with an intent

to detain, and both must exist and be found by the jury in order to constitute an offense under the statute.

The matter of intent, both as to detention and concealment, is made a question of fact under the provision of the section, and this question of fact is to be proven like any other fact, from the acts and conduct of the parties, considered in connection with all the other circumstances in the case. And while it is the peculiar province of a jury to find upon the fact of intent, and their finding thereon is generally conclusive, yet this conclusiveness exists only when the evidence bearing upon intent (when intent is made a question of fact) is such that the jury were warranted in reasonably inferring therefrom the existence of the particular intent made necessary by the law to be found by them in order to support their verdict. This is true when the evidence, even though meager, is yet sufficient, if believed by the jury, to support their finding, and is always true when sufficient but conflicting evidence is presented upon the subject.

When, however, there is no conflict, and all the evidence which was before a jury, and from which they found upon the matter of intent, is before this court, there is then presented a question of law whether such evidence was sufficient to sustain the finding of a specific intent, which the law requires shall exist in order to constitute an offense. This is the question presented here: whether the evidence which is undisputed was sufficient to warrant the jury in their finding (essential to support the verdict against defendant) that the girl Dottie was taken and enticed away by him with intent to detain her from her mother.

Now, while it is true that in compliance with the promise made to the girl Dottie not to disclose her abiding-place he deceived her mother when she sought information from him as to where her daughter was, still, taking this as evidence tending to prove concealment under the statute, it was only proof bearing on one of the essential elements necessary to be proven thereunder. It was essential further to prove that the girl was taken by defendant with intent, not only to conceal her, but to detain her from her mother. Upon the latter fact we are satisfied, from an examination of the record, that there is no evidence tending to show that the girl was taken to the summer resort by defendant with any intention of

detaining her there, or from which an intent to detain could reasonably be inferred. On the contrary, the evidence without contradiction shows that nothing was done by defendant which tended, expressly or impliedly, to disclose any intention on his part to detain her anywhere.

It may be true that the girl Dottie, being under age, could not legally consent that the defendant should take her from her home in St. Helena to the summer resort at Howell Mountain, and that she could not authorize the defendant, he having persuaded her and her companion to go there instead of going to San Francisco, to conceal from her mother her whereabouts. But the fact that she was a minor, and that he took her to the resort and concealed her presence there from her mother, did not of itself prove that he intended to detain her. Nor did the circumstance that she was a minor preclude taking into consideration her conduct and actions, for the purpose of ascertaining whether as a fact her will was dominated by that of the defendant, and her freedom of action controlled and restrained entirely by his wishes, or whether her going to and remaining at the resort for the five days that she did was not a matter of her own volition, induced by the suggestion of the defendant that it was much better for her to go there than to go to San Francisco, as she and her companion contemplated.

The evidence shows that the girl Dottie was self-willed and disposed to follow her own inclinations; that she was not of such tender years that her will and capacity to act freely could be easily controlled; she was not of submissive disposition, and it is apparent from her testimony on the trial that she was not, even in her youthfulness, a girl disposed to be influenced by the wishes or judgment of more mature persons. Her close companion, Mattie, was of the same general disposition. Both girls were tired of home and desirous to get away to San Francisco, and were bent on going there the evening the defendant met them. Had they not gone that night it would have been but a postponement of their going. Conceding that the defendant should not have promised to take the girls anywhere, that he should not have agreed to take them to Napa, and should not have persuaded them to go to Howell Mountain, still the fact that he did so did not of itself subject him to punishment under the section. He

could only be guilty where the taking was with the intent both of detaining and concealing them. His concealment consisted of keeping a promise foolishly made, and as foolishly adhered to, not to tell Dottie's mother where she was. He seems not to have otherwise kept it, a circumstance which, while it would not excuse his conduct in the matter of concealment from the mother, yet has an important bearing upon the question as to whether there existed an intent to detain. Now, as to that intent. There is no doubt but that both these girls—one as willfully disposed as the other—had in contemplation for some time getting away from St. Helena and going to San Francisco. They had nothing in view on such a journey except to get away from home, attracted doubtless by the allurements of a large city, and it needs no comment as to the dangers which would beset them when they arrived there.

It was to prevent their going to San Francisco that the defendant persuaded them to go to Howell Mountain, a well-known locality and not far distant from their home. There was no intention thereby to detain either of them from their parents. His intention was to protect them against their own folly. He appears to have had no other motive. To accomplish a worthy purpose he took them to a respectable place and left them among worthy people. They were not requested or enjoined by him to remain there for any length of time. They were free to remain as long as they wished, or to leave when they felt disposed. Their freedom of action was unhampered; they had the means with which to depart when they chose, and there were facilities for departure for home whenever they wished to embrace them. All they had to do was to take the stage for St. Helena, which passed the resort daily, or to send word to defendant, to their parents, or to any one else in St. Helena or Napa, to send a conveyance for their return. They sent for such a conveyance when they got ready to come home.

It cannot be seriously or successfully contended that under such circumstances there was room for even an inference that the defendant took and enticed either of these girls to the summer resort with intent to detain them from their parents, or with any sinister motive, or for any other purpose than their own good.

However injudicious the conduct of the defendant may have been, the evidence is far from showing the guilty intent to detain either of them which the law requires to exist as a fact under the section in order to warrant conviction.

It would have been better for the defendant, as he has doubtless now realized, to have persuaded the girls to remain home for at least a few days, and in the mean time have informed their parents of their contemplated departure for San Francisco, and so permitted the parental authority to be exercised to restrain their youthful indiscretion. While his motive in persuading the girls to abandon their clandestine departure for San Francisco was commendable, his persuading them to go to the Howell Mountain resort, and taking them there when they submitted to his persuasion, was indiscreet and injudicious, and his deception of Dottie's mother as to her daughter's whereabouts was inexcusable. Indiscretion and falsity amounting to concealment cannot, however, subject him to punishment under the section of the statute upon which he was prosecuted, in the absence of all evidence as to one of the other essential facts necessary to conviction—evidence showing that the taking of the girl Dottie to the summer resort at Howell Mountain was with intent to detain her from her mother. The evidence not only does not show such intent, but effectually negatives it, and for this reason the verdict was not justified by the evidence.

The judgment and order denying the motion for a new trial are reversed, and the cause remanded for a new trial.

Beatty, C. J., and Henshaw, J., concurred.