[Crim. No. 1586. Second Appellate District, Division One.—January 20, 1928.]

THE PEOPLE, Respondent, v. ELMER TAYLOR, Appellant.

Edward J. Kelly and Nicholas J. Martin for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—This is an appeal from a judgment of conviction and from an order denying defendant's motion for a new trial.

Defendant was charged by an information filed by the district attorney of San Diego County, in two counts, with the crime of child stealing. The first count charged the theft of a girl by the name of Ellen Tibbets, and the second charged the stealing of a girl by the name of Claudine Chriswell. Both girls were between fourteen and fifteen years of age at the time the alleged offense was committed.

The crime which defendant stands convicted of is defined in section 278 of the Penal Code, which reads as follows:

"Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable by imprisonment in the state prison not exceeding twenty years."

Three grounds are urged by appellant for a reversal of the judgment of conviction:

(a) That the venue was not established;

(b) That the evidence is insufficient to support the judgment of conviction; and

(c) That the court misdirected the jury in matters of law.

According to the testimony of the two girls, the story of the events leading up to the alleged stealing and what followed until the arrest of all three in New Mexico may be briefly related as follows:

On March 16, 1925, which is the date the offenses are alleged to have been committed, and for some months prior thereto, both girls were attending school and residing in their respective homes with their parents in the city of Oceanside, San Diego County, California. Several weeks previous to the date of the alleged stealing the defendant made the acquaintance of the girls by picking them up on the street on their way home from school and taking them for a ride in his automobile. Between that time and March 16th he had taken the girls on several rides. On the afternoon of March 15th the defendant met the girls on their way home from school and took them for a ride. On this occasion he proposed to them that they all drive to Long Beach, where a carnival was being held. The girls refused the invitation, giving as a reason that it was necessary for them to be at home that afternoon at 4 o'clock. Again on the following day defendant picked up the girls on their way home from

school and again suggested to them that they drive up to Long Beach and attend the carnival. This time the girls consented to the proposal, and it was agreed that they would meet later in the evening and start out on the trip. Some time between 8 and 9 o'clock that evening the Chriswell girl met the defendant on one of the main streets of Oceanside, and the two drove up and got the Tibbets girl at or near her home. They arrived in Long Beach late that night. They spent the night in the automobile, the girls sleeping on the back seat and the defendant on the front seat. Just where the automobile was parked does not appear in the evidence, but it was somewhere in the city of Long Beach.

The following morning the defendant proposed to the Chriswell girl that they get married. After some discussion the girl assented to the suggestion, but requested that they return to Oceanside in order that she might get other clothes, as she had with her only the clothes she was wearing. Defendant objected to this suggestion and promised to purchase the necessary clothing for the girl. When the subject of marriage was further discussed defendant stated that they would have to go farther on for the marriage, as he did not consider it advisable to be married in Long Beach. The Chriswell girl demurred to the plan to go farther alone with the defendant, and so it was arranged that the Tibbets girl would accompany them. Again the question of extra clothing for the girls was raised by them, and the defendant met their proposal to return to Oceanside in order to secure the necessary clothing with the promise to provide clothing for both girls. Thereupon they left Long Beach for Yuma, Arizona. It may be observed at this point that the party did not attend the carnival at Long Beach, nor does it appear that any attempt was made to go to the carnival, nor was any explanation made for not attending the carnival.

They arrived at Yuma the following evening, and again spent the night in the automobile, the girls sleeping in the back seat, and the defendant on the floor of the car. The next day they pushed on to Phoenix, Arizona, where they spent the night, the girls again sleeping in the car with the defendant. In due time they reached Lordsburgh, New Mexico, where the defendant had friends, in whose home they spent two nights, the girls and the defendant sleeping in the same room on the floor. They then drove on to

Portales, New Mexico, where they remained for some weeks and where they were eventually apprehended. At Portales, they stayed in a rooming-house, the two girls and the defendant occupying the same room. In accordance with the suggestion of the defendant, the Chriswell girl went under the name of Mrs. Taylor and posed as the wife of the defendant, while the Tibbets girl went under the name of Ellen Cloudman, and posed as the defendant's sister-in-law. The Tibbets girl testified that while staying at Lordsburgh the defendant had intercourse with her, and the Chriswell girl testified that in the rooming-house at Portales the defendant had intercourse with her; that in Portales the defendant and the Chriswell girl lived and cohabited as husband and wife. On several occasions during the trip from Long Beach to Portales the Chriswell girl raised the question of their getting married, but the defendant stated that they would have to put it off as he did not have sufficient money. After spending some days at Portales, the girls, having as yet received no additional clothing and being without any money, decided that they would try to return home and started out to walk, going down the railroad track. The defendant overtook them and induced them to return, promising that he would get work and would soon have money and secure clothing for them. The girls returned with him and continued to live in the rooming-house at Portales until all were arrested.

On one or two occasions while the girls were in Arizona and in New Mexico one or both of them suggested writing back to their parents to let them know where they were, but the defendant advised against this course, and in deference to his wishes they did not write.

The parents of both of the girls testified that they never heard from the girls during their absence until they were apprehended by officers; that they had no knowledge or intimation that the girls were going to leave home, nor had they any knowledge of the girls' whereabouts until their apprehension in Portales. The girls were away from home about four weeks and left home without the consent of their parents.

Defendant's story of the affair differs in certain respects from that of the girls. He denied that he invited the girls to go with him to Long Beach, but asserted that the Chris-

well girl, learning that he was going to Long Beach to visit members of his family, requested that he take her on the trip; that he demurred to the suggestion, because of a fear of criticism that he might be subjected to, and that she overcame his reluctance to take her by promising to get her girl chum, Ellen Tibbets, to accompany them; that the Chriswell girl invited the Tibbets girl to make the trip with them; that he took the girls to Long Beach at their request, with the expectation of returning that night or the following morning to Oceanside. He further asserts that he never asked the Chriswell girl to marry him, nor did he promise to marry her; that she requested him to marry her in order to aid her out of a difficult position in that she was pregnant and wished to cover up her indiscretion by having her child born in wedlock. Defendant further denied that it was his suggestion that they go on from Long Beach to Arizona and New Mexico, and insisted that this was a plan proposed by the girls, who represented to him that they were unhappy at home and desired to get east to some relatives of the Tibbets girl. He asserted that while the Chriswell girl was driving the car in Long Beach, she asked as to where a certain road led to, and when defendant replied, ''Yuma, Arizona,'' she drove the car out that road and thus they started for Arizona; that on several occasions on the trip when the Chriswell girl asked him if he would marry her, he replied that he would not. The defendant further denied that he had any sexual relation with the Tibbets girl, but admitted such a relation with the Chriswell girl.

On other points, defendant's testimony conflicted with that of the girls, but we do not deem it of sufficient importance to dwell further in detail upon his testimony.

Appellant urges that taking the girls' own testimony, that is, as to the circumstances of leaving Oceanside, there is nothing in the record to support the charge of child stealing as defined in section 278 of the Penal Code; that according to the girls' own admissions, it was their intention to return to Oceanside when they left Long Beach; that at most the trip from Oceanside to Long Beach was a joy-ride to visit a carnival, with the expectation of returning that night or the next day.

Appellant further urges that if there is any evidence in the record that is at all susceptible to the inference that

defendant was taking or enticing the girls away with the intent to detain and steal them from their parents, it is that evidence which relates to the events in Long Beach on the morning following their arrival there. In other words, if there is any evidence in the record that can possibly sustain the charge, it was what happened or was done at Long Beach in Los Angeles County, and not in San Diego County.

The offense with which the appellant was charged involves:

(a) The taking or enticing away of a minor child;

(b) A malicious intent, or the use of fraud or force in the taking;

(c) An intent to detain and conceal the child from its parents. If there is evidence in the record which directly proves these requisite elements, or evidence that would reasonably justify the inference that the necessary facts and conditions existed, then the judgment must be sustained.

The testimony of the girls furnishes abundant evidence to support the finding that defendant not only took the girls away, but that he also enticed them away. Conceding that when they left Oceanside it was the intention and expectation of the girls to go only to Long Beach and return on the following day to Oceanside, this would not determine what was in the mind and purpose of the defendant. In the light of the undisputed fact that when the party arrived at Long Beach they did not visit the carnival, nor was any attempt made by the defendant to attend the carnival, or give an excuse for not doing so, the jury might very well have concluded that the representation of defendant that a carnival was in progress in Long Beach, and a repeated invitation to the girls to go with him to see it, was simply a method of enticing the girls to go away with him. In interpreting one's actions for the purpose of determining the intent, it is quite proper, and indeed often necessary, to consider the entire conduct of the individual before and after the particular act which is the subject of scrutiny. "The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. . . . " (Sec. 21, Pen. Code.)

Considering further the conduct of the defendant toward the girls and subsequent events after leaving Long Beach, the inference that defendant took and enticed the girls away from home for the unholy purpose which became manifest

when they reached Arizona and New Mexico becomes almost irresistible.

Appellant's contention that the utmost in the way of misconduct on the part of the defendant that may be reasonably inferred from the evidence, and particularly from the testimony of the girls as to the trip from Oceanside to Long Beach, is that he intended to and did take the girls for a joy-ride to Long Beach to attend the carnival, with the intention of returning that night or the following day. Such might well have been the conclusion of the jury had the defendant returned the girls to their homes as planned, or if, as urged by appellant, the girls insisted on remaining away from their homes and going east to relatives, he had returned to his work in Oceanside. Unfortunately for his contention, his subsequent conduct after arriving at Long Beach nullifies the favorable aspect of his earlier actions.

Added support is given the theory of the prosecution, that the twice accorded invitation to the girls to accompany him on a trip to see the carnival at Long Beach shows a preconceived plan on the part of appellant to induce the girls to leave home with him, in the testimony of one Ed Hall, a watchman at Oceanside, who related a conversation had with appellant just prior to March 16th, wherein the appellant, in reply to a comment about having his automobile newly painted, stated that he expected to go away on a trip to be gone for a while. The testimony of the appellant is so full of inconsistent statements and explanations that do not explain as to give added support to the findings of the jury.

Appellant in his brief quotes at length from the case of *People* v. *Black,* 147 Cal. 426 [81 Pac. 1099], which he asserts involve facts similar to those in the instant case. A reading of that case discloses a marked difference in certain essential matters from the facts in the instant case. To point out in detail the differentiation would only serve to extend this opinion to unnecessary length.

Other considerations are readily suggested from a review of the evidence that may well have entered into the conclusion of the jury that all of the necessary elements of the offense were present when the defendant drove away with the girls from Oceanside. We are satisfied that there is abundant evidence in the record to support the judgment of

conviction and also the finding that the offense was committed in San Diego County.

Involved in the last point urged by appellant are two instructions, one given by the court and the other requested by appellant, but refused. We have examined both instructions and are satisfied that no prejudicial error was committed by the court in giving the one and refusing the other.

The judgment and order denying the motion for a new trial are affirmed.

Houser, Acting P. J., and York, J., concurred.