[Crim. No. 1514. First Appellate District, Division One.—December 22, 1928.]

THE PEOPLE, Respondent, v. SAM FERUGIA, Appellant.

W. D. Crichton for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

CAMPBELL, J., *pro tem.*—Appellant was charged with the crime of murder. He was convicted of murder of the second degree and from such judgment of conviction and from an order denying his motion for a new trial has appealed.

Appellant urges as his points on appeal: 1. Errors of the court in receiving evidence over the objection of defendant; and, 2. Errors of the court in the giving and refusing certain instructions. Under the first objection appellant contends that the court erred in admitting in evidence an extrajudicial statement made by him in the county jail following his arrest. The phonographic reporter who took defendant's statement, which was made in response to questions propounded by the district attorney, was called as a witness and was asked in three preliminary questions whether promises or threats had been made to induce such statement, and whether it was voluntarily given, to which he answered that there were no promises or threats given or

made, and that the statement was voluntary. The questions asked the reporter were in the usual form and were confined to what occurred in the witness' presence. Objection was made that they called for the opinion and conclusion of the witness. The court overruled the objections, stating that the defense might cross-examine the witness upon that point. Counsel for defendant, however, did not avail himself of such privilege. The question here presented is passed upon directly and the foundation laid for the admission in evidence of the statement held sufficient in *People* v. *Rodundo,* 44 Cal. 538, and reiterated in *People* v. *Goldenson,* 76 Cal. 350 [19 Pac. 161], and *People* v. *Bateman,* 80 Cal. App. 151 [251 Pac. 335].

It is contended that the court erred in allowing certain portions of the extrajudicial statement to be read to the jury, and that the court further erred in refusing to strike out such portions when requested to do so. The first portion of the statement objected to consists of a statement by the defendant as to how long he had owned the shotgun with which he had shot the deceased and what use he had made of it, he stating that months before he had used it to shoot jack-rabbits which he fed to his chickens and to his dog. The second portion of the statement to which objection was made pertains to when defendant came to this country from Italy. The third portion of the statement objected to concerns a quarrel which defendant at one time had with his wife and which resulted in the police being called, but according to defendant's statement the quarrel was the result of interference by neighbors, which prompted his wife to try to whip him. "I got one slap in the face and I came back with a little blow. That is all the trouble I had and I got so mad the policeman come and I got a little whipping too. I got mad at my wife and I got mad at the neighbor because he told my wife, and blow come to the head and I don't know what happened and I got awful mad." The first two portions objected to could in no way prejudice the defendant, and while the objection to the last portion relative to the quarrel the defendant had with his wife should have been sustained, its admission in evidence is not of such a prejudicial nature as to call for a reversal of the judgment.

 Appellant claims that the court erred in refusing to give eleven instructions requested by him. With the exception of two of the instructions appellant has done no more than cite the court to the places in the record where such instructions are to be found and made the assertion that they should have been given. Such assignments of error are insufficient. "It is due to this court from the members of the bar to point out clearly and concisely the rulings complained of as erroneous and the reasons why they are so, with reference to authority, if any. In case counsel will not take the trouble to do so, we shall deem the matter as of not sufficient importance to merit notice in an opinion." (*People* v. *Woon Tuck*, 120 Cal. 297 [52 Pac. 853]; *People* v. *McLean*, 135 Cal. 309 [67 Pac. 771].)

The first of the two instructions singled out by appellant for argument is requested instruction X, and the only material difference between the requested instruction and the one given by the court is that the court's instructions told the jury that they could find the defendant guilty of murder in the first degree, guilty of murder in the second degree, or not guilty, whereas the requested instruction contained guilty of manslaughter between guilty of murder in the second degree and not guilty.

The omission to instruct the jury that it could find the defendant guilty of manslaughter might have constituted error if there were any evidence in the record which, if believed, would have justified such a verdict. But the record contains no such evidence. Section 1105 of the Penal Code provides: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

The defendant did not take the witness-stand, and he produced only one witness whose testimony was confined to the question of decedent's reputation for peace and quiet. It therefore follows that any evidence of record which would have justified the instruction that the jury might find the defendant guilty of manslaughter must be found in the prosecution's case. The case of the prosecution consists of

the proof of the *corpus delicti* and an extrajudicial statement of defendant in which he admits he shot the decedent, together with the testimony of several witnesses which tended to corroborate various matters contained in such statement.

The story told by defendant is as follows: He was operating a small farm on the outskirts of the city of Fresno. On the eighth day of April, 1928, he was desirous of obtaining a horse-collar so that he might do some plowing. On that day he asked a certain neighbor of his if he—the neighbor—had a horse-collar of a certain size which he could spare for a time. The neighbor said that he had one about a size smaller and that it might do. The defendant and the neighbor and a third party left defendant's farm, got the horse-collar and returned, tried the horse-collar for size and found it too small. At this juncture they discovered a second horse-collar in defendant's farmyard. They tried that collar for size and found it suitable. About the hour of 8 o'clock P. M. the defendant was in bed, but not sleeping. He heard someone knocking at his front door. He called: "Who is there?" and received the answer: "This is Bill." He got up and went to the door and found the decedent, Bill Pearson, a negro, at the door. He said: "What do you want?" Bill Pearson replied: "I want money." Defendant said: "What do you want money for?" Decedent replied: "I want three dollars—I throw collar on your place." Defendant said: "What business you got throwing a collar on my place, who gave you that privilege to throw the collar on my place?" Decedent answered: "You give me three dollars or give me the collar." Defendant replied: "I don't buy anything. I don't want to buy anything that you steal." Decedent then said: "Give me that collar." Defendant replied: "I can't go to the barn, it is all full of mud. Please go home tonight and come tomorrow morning and talk like a gentleman. You go to bed. You lay down. Don't come here and make trouble. You are drunk. Get out of here and go to bed." Decedent replied: "No, I be damned if I get out of here." The defendant then stated that he and the decedent remained on the porch for about ten minutes; that he—the defendant—then went in the house and put on his trousers and returned to the porch, saying to decedent: "Please go home. Bill, you go home tonight, you

come tomorrow''; decedent replying: ''No, I want my money, give me my money. Give me the money or the collar.'' Whereupon defendant replied: ''I ain't giving you no money or I ain't giving you no collar.'' That thereupon the defendant ushered decedent to the front gate, put him on the outside and closed the gate, saying: ''Please you go to sleep, go in the house and go to sleep.'' The defendant's statement was then to the effect that the decedent remained on the sidewalk in front of the house for a few minutes, and then went around to the side of the house on the street and toward defendant's barn; that the defendant then went in the house and got his double-barreled shotgun and went out to the back of the house, where he waited ten or fifteen minutes; that he saw the decedent light a match; that at the end of that time decedent jumped up on the fence with his feet remaining upon the outside; that the defendant then called to the decedent to ''get out of there,'' decedent making no reply; that then defendant shot the decedent. The language of the defendant is as follows: ''He didn't say anything, then I shoot him. I never shoot him to kill him. I don't know what was going to happen. I never tried to kill him, I tried to scare him—he no answer me, and I shoot him.''

When viewed in the light most favorable to the defendant, there was nothing which could have reduced the crime from murder to manslaughter. The homicide was not committed ''upon a sudden quarrel or heat of passion,'' and therefore it could not have been voluntary manslaughter. Nor was it committed ''in the commission of an unlawful act not amounting to a felony or in the commission of a lawful act which might have produced death in an unlawful manner or without due caution and circumspection.'' The fact that defendant in his extrajudicial statement stated that he did not intend to kill decedent did not tend to reduce the offense from murder to manslaughter. In the case of *People* v. *Freel*, 48 Cal. 436, the succinct statement is made: ''Whether the homicide amounts to murder or manslaughter merely, does not depend upon the presence or absence of the intent to kill.''

''If the unlawful killing is done without the provocation and sudden passion which reduces the offense to manslaughter, or is done in the commission of an unlawful act,

the natural consequences of which are dangerous to life, or is committed in the attempt to perpetrate a felony other than those mentioned in the description of murder in the first degree, or the circumstances of the killing show an abandoned and malignant heart, this is murder in the second degree, unless the facts prove the existence in the mind of the slayer of the specific intent to take life. Malice aforethought is implied from the absence of considerable provocation, the wanton recklessness, or the felonious purpose'' (*People* v. *Doyell,* 48 Cal. 85; *People* v. *Cox,* 76 Cal. 286 [18 Pac. 332]). In *People* v. *Jones,* 160 Cal. 367 [117 Pac. 180], the court approved an instruction containing the following, given in *People* v. *Bruggy,* 93 Cal. 476 [29 Pac. 26] : ''To reduce a felonious homicide from the grade of murder to manslaughter upon the ground of a sudden quarrel or heat of passion, the provocation must be of such character as would be naturally calculated to excite and arouse the passions, and it must appear that the party acted under the smart of this sudden passion and resentment. If, however, the provocation was of slight and trifling character of such a nature as would not be calculated to arouse the passion, or if sufficient time had elapsed between the provocation and the fatal blow for passion to subside and reason to resume its empire, the offense will not be mitigated but the slayer will be guilty of murder.''

In the present case, according to appellant's extra-judicial statement—which is the only evidence on this question—there was no quarrel or heat of passion nor any facts which show or tend to show that the crime was manslaughter. Where the evidence in a homicide case fails to contain evidence having a tendency to show that the crime is manslaughter rather than murder, it is proper for the court to refuse to give an instruction authorizing the jury to find the defendant guilty of manslaughter (*People* v. *Turley,* 50 Cal. 469; *People* v. *Fellows,* 122 Cal. 240 [54 Pac. 830]).

The jury was instructed as to the ingredients necessary to constitute murder of the first and second degrees; that manslaughter is the unlawful killing of a human being without malice; that the defendant is presumed to be innocent until the contrary is proved, and that in case of a reasonable doubt whether his guilt has been satisfactorily shown he is entitled to an acquittal.

■ It will be presumed that the jury heeded the court's instructions and performed its full duty. If it had not been satisfied beyond a reasonable doubt that the defendant was guilty of murder, but that the killing was without malice and was therefore manslaughter, under the instructions of the court it would have acquitted appellant, and he, therefore, cannot be heard to complain (*People* v. *Brown,* 3 Cal. App. 178 [84 Pac. 670]; *People* v. *Lopez,* 135 Cal. 25 [66 Pac. 965]).

■ Appellant urges that the court erred in refusing his proposed instruction XI, in substance, that the law requires the concurrence of twelve minds in the conclusion of guilt; that before a verdict of guilty can be rendered each juror must be satisfied beyond a reasonable doubt of defendant's guilt, and if any one juror after having considered the evidence and consulted with the other jurors should entertain a reasonable doubt of defendant's guilt, such juror should not under his oath consent to a verdict of guilty. In support of this contention appellant has cited *People* v. *Loomer,* 13 Cal. App. 654 [110 Pac. 466], *People* v. *Wong Loung,* 159 Cal. 520 [114 Pac. 829], and *People* v. *Singh,* 20 Cal. App. 146 [128 Pac. 420]. While each of these cases holds that such instruction is proper and should be given, in the Loomer and Singh cases it is said that the refusal to give such instruction did not constitute reversible error, and in the Singh case it is pointed out that the Wong Loung case was reversed for other reasons. The following language of the court in *People* v. *Singh,* is applicable here: "While the opinion of the Supreme Court as expressed in those cases (*People* v. *Dole,* 122 Cal. 486 [68 Am. St. Rep. 50, 55 Pac. 581]; *People* v. *Howard,* 143 Cal. 316 [76 Pac. 1116]; *People* v. *Wong Loung,* 159 Cal. 520 [114 Pac. 829]) is binding upon us, and should have controlled the trial court in its application of the law to the facts of the present case, nevertheless we are satisfied that the mere failure to charge the jury as requested was not in and of itself an error of sufficient gravity to warrant a reversal."

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.