[Crim. No. 135. Fourth Appellate District.—January 21, 1932.]

THE PEOPLE, Respondent, v. FRANK ANNUNZIO, Appellant.

J. M. Lopes for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged in an information filed by the district attorney of Tulare County, with the crime of child stealing, it being alleged that on or about October 15, 1931, he maliciously, forcibly and fraudulently took and enticed away one Opal Hunnicutt, a minor child, with intent to detain and conceal such child from her father, in whose lawful charge she was. The defendant was found guilty by a jury, and prosecutes this appeal from the judgment of conviction.

The first point raised is that the evidence does not support the verdict, in that it does not show a taking and enticing away of a minor child with both the intent to detain and the intent to conceal such child from the parent having legal charge of it. The appellant contents himself with setting forth his argument of law without reference to the facts, placing the entire burden of examining the record on the court, with such assistance as has been given by the attorney-general.

Briefly stated, the facts are as follows: Opal Hunnicutt, the minor in question, was sixteen years of age. Her parents were separated, the mother being in San Francisco while the father, who had custody of the minor, lived in Dinuba, Tulare County, where Opal was attending school. About two months prior to October 15, 1931, the appellant met the mother of the child and subsequently made several trips with her to Dinuba. About ten days or two weeks prior to that date, the appellant first met the child, Opal Hunnicutt. About that time H. T. Hunnicutt, the father of Opal, on finding the appellant at his home, told him, "I don't want you to let Opal get in the car at all—I don't want her going off." The appellant then promised he would not take the girl away and a few moments later was heard to remark to a man who was with him, "Looks to me like this might cause some trouble. If I ever get away from here, never again will they catch me back here." However, Opal testified that about that time the appellant told her if she ever had any trouble at home to let him know and he would come down after her. An outside witness testified that about a week before October 15, 1931, in San Francisco, he was present during a quarrel between appellant and Opal's mother; that the appellant told the mother that he was "going down and get the kid"; and that the mother told the appellant that if he did this she would turn in the number of his car to the officers. On October 12, 1931, the appellant went to an apartment house in San Francisco in company with Ruby Kile, and rented an apartment, paying the rent, giving his name as Frank Rossi, and signing the lease in that name. Ruby Kile is a sister of Opal's mother and was herself of the age of seventeen years at the time. On the morning of October 15, 1931, as Opal was entering the school grounds in Dinuba, she was called over to an automobile in which she found the appellant, Ruby Kile, a man called "Peanuts" and a man called "Grass". She was told the car belonged to the appellant. Ruby asked her if she wanted to go to San Francisco and she replied that she did not because she could not. Ruby then asked her to go to the home of another aunt in Dinuba and see what she had to say about it. They all went in the automobile to the home of this aunt, where the aunt said she would have nothing to say

about it. Thereupon, Opal got into the automobile and the party left for San Francisco, arriving there about 5:30 that evening. Opal testified that before she entered the automobile "they said I had a job" and also that the appellant told her that "Everything would be O. K.; and I would be perfectly safe." Opal testified that on the way to San Francisco the appellant suggested that she would have to change her looks so that people would not know her; that he told her to dye her hair and to change her name; and that in a general conversation which followed, the name of Billie Rossi was decided upon. On arriving in San Francisco Opal was taken to the apartment which had been rented by the appellant, where she stayed with Ruby Kile. The next day the appellant spent three hours in the apartment with the two girls and that evening took them to a show, and after returning to the apartment stayed about thirty minutes and left. Opal testified that while she was in the apartment they took all their meals there and that the appellant brought in all of the groceries and supplies. About 2 or 3 o'clock on the morning of October 17th, the appellant was arrested in connection with this affair. When arrested he denied he had been down to Dinuba but was forced to admit it when confronted with the facts. He denied to the officers that he knew where the girl was, but later told them. At 4 o'clock that morning the officers went to the apartment where the two girls were found, Ruby opening the door after being told that it was the appellant who desired admission. The appellant admitted that Opal's father had told him not to take the girl away, but in addition to what had been stated by the father he testified that the father told him not to take Opal to San Francisco, and that he told him that he had no intention of taking her to San Francisco either then or at any other time. He also admitted that he knew the girl did not have her father's permission to go; that he heard all of the conversation in front of the schoolhouse; and when asked if he did not know that Opal was planning to hide out in San Francisco he replied, "Well no, not exactly, she really wanted to see her mother too and really get away from her father." When Opal was asked if anything was said about seeing her mother she replied: "No we weren't going to see my mother because she

advised me not to.'' Both the father and mother testified that they had not given permission to the appellant to take Opal to San Francisco, and the mother also testified that a few days before, the appellant had told her that he intended to go to Dinuba and bring Opal to San Francisco; that this led to a violent quarrel during which she told him that if he did so she would turn in the number of his car to the officers.

■ Appellant's contention is that the evidence is not sufficient to show that he took or enticed the girl away with the intent both to detain and conceal her. In *People* v. *Taylor,* 88 Cal. App. 495 [263 Pac. 560, 562], the court said: ''In interpreting one's actions for the purpose of determining the intent, it is quite proper, and indeed often necessary, to consider the entire conduct of the individual before and after the particular act which is the subject of scrutiny. 'The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused . . . ' (Sec. 21, Pen. Code.)''

In this case the court also said: ''If there is evidence in the record which directly proves these requisite elements, or evidence that would reasonably justify the inference that the necessary facts and conditions existed, then the judgment must be sustained.''

In *People* v. *Edenburg,* 88 Cal. App. 558 [263 Pac. 857], it was held that only an intent to conceal and intent to detain need be proved, it being unnecessary to prove an actual concealment and actual detention. We think that the evidence above set forth is sufficient to show not only an intention to conceal this girl from her parents and her natural and lawful guardian, but also to show an intention to detain her from her parents at least for a time. The length of time during which he intended to detain her from her parents is immaterial. We think that an inference of the requisite intent on his part is fully justified both by the evidence as to the appellant's conduct before and during the episode in question, and by his own admissions.

■ It is next urged that the court erred in refusing to give certain instructions requested by the appellant. The first error relied upon is the court's refusal to give the

following instruction: "If after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty nor to be influenced in so voting, for the single reason that the majority of the jury should be in favor of the verdict of guilt."

Appellant relies upon the case of *People* v. *Dole,* 122 Cal. 486 [68 Am. St. Rep. 50, 55 Pac. 581]. As one of its instructions, the court read to the jury section 1096 of the Penal Code. Under section 1096a of this Code, this constitutes a sufficient instruction on the question of reasonable doubt. In another instruction the jury were told that the verdict of the jury must be unanimous. If it be conceded that the requested instruction is proper and further, that the refusal to give the same would be error irrespective of the provisions of section 1096a of the Penal Code, the fact would still remain that such error is not a reversible one. (*People* v. *Ferugia,* 95 Cal. App. 711 [273 Pac. 99].) This is especially true where, as in this case, a reading of the entire transcript does not in any manner indicate any miscarriage of justice. (Const., art. VI, sec. 4½.)

█ Appellant also complains of the refusal of the court to give a number of other instructions requested by him. He has not complied with rule VIII of the rules governing this court, and has set forth neither the instructions complained of nor other instructions that were given on the same subjects, nor has he made any argument except a bare statement of where the instruction is to be found in the record, with the statement that the refusal to give the same constitutes error. While we are not bound to consider such assignments of error (*People* v. *Ferugia, supra*), we have examined them all and find the contentions made to be without merit. █ The first one relates to the necessary elements of the crime charged and is fully covered in two other instructions, except that it contains an added statement as to the maximum punishment possible in the case. It was neither necessary nor proper to give this information to the jury. The next one relates to the burden of proof and was fully covered. The next three relate to the burden of proof and reasonable doubt, both of which subjects were fully and fairly covered in other instructions.

The last two relate to the matter of intent and are fully covered in two other instructions.

A number of errors are claimed in respect to rulings of the court on the admissibility of evidence. It is first contended that the court erred in admitting conversations between Opal Hunnicutt and Ruby Kile which took place in front of the schoolhouse in Dinuba, and also on the way to San Francisco. All of these conversations took place in the presence of the defendant and were admissible, particularly in view of the other evidence as to the conduct of the defendant before and after the times in question. In addition, it may be observed that practically everything therein involved was brought home to the defendant by other testimony as to direct conversations with him and by other evidence as to his own actions. Error is next ascribed to the refusal of the court to permit Opal Hunnicutt to answer the question "How did the defendant treat you on the trip," referring to the trip to San Francisco. It is argued that this bears on the question of his intent, but it appears to have no bearing on whether the appellant intended to detain and to conceal the minor from her parents or upon whether he induced her to leave home. Even if error be conceded, it is not sufficient to justify a reversal.

It is next urged that the court erred in admitting in evidence the rent agreement and the receipt for the rent in connection with the apartment in San Francisco, which was rented by the appellant in the name of Frank Rossi and to which Opal Hunnicutt was taken. We think this evidence has a bearing on the question of the intent with which the defendant went from San Francisco to Dinuba, and returned to San Francisco with the minor in his car. It is next claimed that the court erred in permitting the district attorney to ask the mother of the girl under what name she had known the defendant, to which the mother replied that she had known him under three names. We see no error in this, especially since the appellant himself testified that he had gone under three different names and that he rented the apartment involved here under an assumed name. Error is next claimed in that the court struck out the testimony of Ruby Kile as follows: "Q. Well, when you left San Francisco for

Dinuba did you go for the purpose of taking Opal? A. No."
Not only was the purpose in the mind of this witness when
she left San Francisco of little or no importance in this
proceeding against the appellant, but the witness in ques-
tion was permitted to testify to the same effect in other
portions of her testimony.

■ Lastly, it is contended that the court erred in per-
mitting the district attorney to ask the appellant if he
remembered the date of October 15th because he had to
be in court on October 16th, to which the appellant replied
that such was the fact. It is contended that this was not
proper cross-examination and that the question was asked
only to prejudice the appellant in the minds of the jury.
On his direct examination appellant had volunteered the
information that he had to be in court on October 16th.
Under the circumstances, the question objected to was
harmless and immediately thereafter the court sustained an
objection as to whether or not the appellant was personally
interested in any matter before that court. The incident
was trivial, harmless and no error is shown.

We have read the entire transcript and are very far
from being convinced that a miscarriage of justice has
occurred in this case.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.