[Crim. No. 3845. Second Dist., Div. Two. Dec. 7, 1944.]

THE PEOPLE, Appellant, v. ELAINE WISECARVER, Respondent.

Robert W. Kenny, Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Appellant.

David C. Marcus for Respondent.

MOORE, P. J.—The question posed by this appeal is whether the defendant was held without probable cause for the offense of child stealing. Having been committed by the Justice's Court of Compton Township June 1, 1944, she was duly accused by the district attorney under information filed in the superior court. Pursuant to motion under section 995, Penal Code, the accusation was dismissed on the ground that the transcript of the evidence taken before the justice of the peace did not contain evidence or inferences that defendant had violated the code section under which she was accused.

The statute which denounces child stealing reads as follows: "Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having lawful charge of such child, is punishable by imprisonment in the state prison not exceeding twenty years." (Pen. Code, § 278.)

While concededly no force was employed by defendant to take away the boy of 14 years, yet a careful scrutiny of the unfolded record exposes substantial evidence that she was activated by malice or moved by fraudulent design in enticing him away with intent to detain and conceal him. Such proof required determination by a trial on the facts. This decision is not intended as a holding that the young woman is guilty as alleged but rather to uphold the thesis that an information alleging a felony should be tried before the tribunal created for the purpose of determining the guilt or innocence of a person so accused, if the examining trial developed evidence which might be reasonably interpreted as proof of guilt. That an analysis of the evidence fairly shows that there was reasonable cause for holding that defen-

dant maliciously or fraudulently enticed the boy away with intent to detain and conceal him from his parents, should readily appear.

Defendant is twenty-one years of age. Prior to April 28, 1944, she resided in Compton, some ten miles south of Los Angeles, where she was known as Elaine Ludlam. She had two children, ages two years and eight months, respectively, by different fathers. She had never been married but was living with a man in her home. Some three months prior to April 28 she formed the acquaintance of Ellsworth Wisecarver, fourteen years of age, who lived at Compton with his parents. During that period he frequented her abode. About April 21 Ellsworth confided to his mother that he desired to marry defendant; that he did not love Elaine but that if he married her he would not have to attend school. His mother expressed astonishment at his suggestion that he wished to marry an illegitimate mother. She urged the folly of a boy of fourteen entering into a matrimonial alliance and promised that he might visit his relatives at Oroville at the expiration of the school term. Immediately following her conversation with Ellsworth, in company with her daughter, age nineteen, Mrs. Wisecarver called upon defendant and demanded to know of her why she was running around with ''Sonny,'' as her child was familiarly known. She virtually accused the woman of having the boy in hiding and admonished her to send him home immediately. His arrival at the homestead was not then delayed.

Subsequent happenings were without the knowledge of Mrs. Mildred Wisecarver who appears to have exercised the parental authority. On the evening of April 28 defendant left her two children at the home of her mother, Mrs. McEntee, in Los Angeles, and in her own automobile accompanied by Ellsworth and one Fred Adams called at the home of one Loella, a sixteen-year-old girl of Compton, and the four departed for Yuma, Arizona. Ellsworth was penniless. Although Elaine was practically without funds on arrival at their destination she financed the journey. On the way to and at Yuma she wired her mother of her need of funds and of her intention to marry Ellsworth. Also, she advised her friends Loella and Fred Adams that she and the boy were going to be married. She thereupon wrote a letter to the clerk consenting to the marriage of Ellsworth Wisecarver to Elaine Ludlam and signed the name of Mildred Wisecarver. Upon arrival at Yuma on the evening of the 29th both couples pro-

cured licenses from the clerk of the court and both were married before the same justice of the peace. The Adams couple returned by bus to Los Angeles after defendant had notified them that she and Ellsworth were going to "Delaware."

For two weeks following April 28 the Wisecarver parents had no knowledge of the whereabouts of their child. At no time had they consented to his marriage or to his departure from the state. Although Elaine communicated her plans and movements to her own mother and by letter advised her friend, Martha Lambert of Compton, admonishing the latter not to say anything to "you know who," yet she did not communicate with Mildred Wisecarver who had forbidden the marriage. She furnished transportation, paid all expenses on the way to Yuma, purchased the license and paid all bills at hotel and café. Following the marriage she procured a loan on her automobile and, financed with the funds thus acquired, with the child she proceeded on her way to Denver. At no time did Ellsworth communicate with his parents, and a jury might readily infer that his failure to keep them aware of his whereabouts was due to the directions of Elaine. Their trip to Denver was Elaine's choice. Her father resided there.

It was defendant's contention before the court below, and evidently the theory of the trial judge, that because Ellsworth proposed marriage to defendant and willingly accompanied her to Arizona defendant could not be guilty of the offense charged. But the statute does not confine the act of child stealing to a forcible taking away. From the reproving words of Mildred Wisecarver, spoken to Elaine on April 21, it would not violate the rules of logic for a jury to infer that malice had envenomed the heart of the rebuked woman and inspired her to seek retribution.

However, the fraud feature of the statute affords a richer reservoir of fact from which reasonable inferences might warrant a verdict of guilty. The word "fraudulently" as used in the statute is all-encompassing. It includes all surprise, trick, cunning, dissembling and unfair ways by which another is deceived. (*People* v. *Simmons*, 12 Cal.App. 2d 329 [55 P.2d 297].) Fraud may be committed by declaring to be true that which the declarant does not believe to be true; by suppressing a fact which he is bound to disclose; or by making a promise without any intention of performing it. (Civ. Code, § 1710; *Wells* v. *Zenz*, 83 Cal.App. 137, 140 [256 P. 484].) Moreover, any act fitted to deceive is actual fraud. (Civ. Code, § 1572.) As proof of the

fraud on the part of the accused the court should consider the conduct of the parties together with all the circumstances before and after the act complained of. (*People* v. *Annunzio*, 120 Cal.App. 89, 94 [7 P.2d 739].)

When Mrs. Wisecarver remonstrated with Elaine against the latter's encouraging Ellsworth in the thought of marriage, defendant disclaimed such intention and, probably, in order to mislead and deceive the mother, stated to Mrs. Wisecarver that she was provoked at the things the boy had said about her. Neither did she offer to bid his mother farewell nor suggest that the boy do so. On the contrary she chose the darkness of night to envelop her movements as she hastily sought security from detection in another jurisdiction. Also, her preparation and forgery of the note of consent; her placing it in the hands of Ellsworth to be used; her suggesting that he present it to the clerk as a genuine document: these acts are the insignia of fraud. Indeed, they are a fraud. They were conceived for the purpose of enabling defendant to conceal and detain the child away from his home and from the nurture and protection of his natural guardians. Her failure to do any of them would have frustrated the accomplishment of her reprehensible act to which she was committed. She knew that the lad could not be married in California because of legal barriers. She knew that he could not wed in Arizona unless she committed a felony to procure a license. She did not hesitate at an act involving moral turpitude to achieve her unworthy aim.

Defendant's argument proceeds upon the theory that the accusation is groundless because of the testimony of Ellsworth Wisecarver that he had proposed the marriage and that he had suggested the flight to Arizona. But his word does not spell finality. There is no halo about the head of an infant who rebels at normal discipline, hates his school, defies parental authority, prefers the society of a wayward woman, scorns public opinion and moral law, and finally utters a forged instrument to gain his ends. No reason appears why a jury should believe his story as against reasonable inferences that might be drawn from other evidence.

 That he may have accompanied defendant of his own volition is immaterial. (*People* v. *Munos*, 84 Cal.App. 6, 9 [257 P. 549]; *People* v. *Torres*, 48 Cal.App. 606, 608 [192 P. 175].) The purpose in the mind of defendant is the factor that determines her moral turpitude, if any. The crime of child stealing might be found to have been complete

the moment defendant transported Ellsworth from the environs of his home with intent to detain and conceal him from his parents. (*People* v. *Casagranda*, 43 Cal.App.2d 818 [111 P.2d 672]; *People* v. *Mohr*, 24 Cal.App.2d 580 [75 P.2d 617]; *People* v. *Smith*, 17 Cal.App.2d 468 [62 P.2d 436]; *People* v. *Palmer*, 50 Cal.App.2d 697 [123 P.2d 882].) The situation of defendant is not unlike that of one Gillispie who was accused under similar circumstances. (104 Cal.App. 765 [286 P. 502].) The fifteen-year-old daughter of the complainant there willingly left her mother's home about seven o'clock in the evening. Having pretended that he was accompanying the girl to a party at a neighboring home, the man drove her to Nevada where they were married, thence to the State of Utah. They subsequently made their home in Oregon until the girl was returned to her mother and defendant was convicted of having fraudulently enticed her away with intent to detain and conceal her from her parent. That case demonstrates that there was good cause for denying the motion under section 995 to dismiss the information by reason of the fact that there was probable cause for her commitment. If there was reasonable cause for her commitment the motion should have been denied. ▮ "Probable cause" is a state of facts which inclines a man of ordinary prudence conscientiously to entertain a strong suspicion that a prisoner is guilty. (*People* v. *Novell*, 54 Cal.App.2d 621 [129 P.2d 453]; *In re McCarty*, 140 Cal.App. 473 [35 P.2d 568].)

It follows that upon the hearing of the motion to dismiss, the court was not required to determine whether the evidence is sufficient to convict, but only whether the prisoner should stand trial. ▮ In a criminal action the sovereign has the same right to have the truth of its accusation against the defendant determined by a trial court to the same extent and in the same degree as has the accused. (*People* v. *Stoll*, 143 Cal. 689, 696 [77 P. 818]; *People* v. *Pruitt*, 55 Cal.App. 2d 272, 275 [130 P.2d 767]; *People* v. *Borrego*, 211 Cal. 759, 765 [297 P. 17].) It is as much a technical breach of the rules of procedure to deny the People a trial upon an information based upon such facts as might reasonably convince a jury of defendant's guilt as it would be to convict a defendant upon the mere filing of an indictment. ▮ It is the duty of the magistrate to commit the accused "if it appears from the examination that a public offense has been committed." The question of guilt is utterly one for the determination of the superior court. (Pen. Code, § 872.)

The contention that there is no appeal by the People from an order dismissing an information under section 995 is without support. Penal Code, section 1238, was amended in 1935 in order to allow such appeal. Its language is clear and concise in declaring: ''An appeal may be taken by the people: (1) From an order setting aside the indictment, information, or complaint; . . .'' This statute is not inconsistent with a number of decisions by the Supreme Court of the United States in holding valid a similar statute by the Congress. (*United States* v. *Bitty*, 208 U.S. 393 [28 S.Ct. 396, 52 L.Ed. 543]; *United States* v. *Heinze*, 218 U.S. 532 [31 S.Ct. 98, 54 L.Ed. 1139]; *Taylor* v. *United States*, 207 U.S. 120 [28 S.Ct. 53, 52 L.Ed. 130].)

Judgment reversed with instructions to deny the motion.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied December 19, 1944.