[Crim. No. 22. Fourth Appellate District.—March 19, 1930.]

THE PEOPLE, Respondent, v. FRANK CARRILLO, Appellant.

Edgar B. Hervey for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Stephen Connell, District Attorney, and Ernest H. Clark, Deputy District Attorney, for Respondent.

BARNARD, J. — The defendant was charged with the murder of one Pedro M. Badillo, and was convicted of murder in the second degree. This appeal is from the judgment upon the verdict and from an order of the court denying a motion for a new trial.

The evidence shows that the Carrillo and Badillo families lived in adjoining houses at Palm City, in San Diego County; that certain differences had arisen between the wife of defendant and the wife and daughter of the deceased; that Mrs. Carrillo had complained to her husband concerning the manner in which she was treated by the Badillo family; and that the defendant had on several occasions talked with the deceased in reference to the situation.

The defendant testified that on the morning of the day of the shooting he went to a near-by store to get some provisions and met Badillo; that they had some talk about the difficulty between the two families; that as they were parting Badillo showed defendant a gun and threatened to break the gun over his head; that when defendant returned to his home he saw Badillo lying on the front porch of his own house; that defendant went upstairs and got his gun; that he went out on the front porch of his house, and then

could see Badillo reclining on his own porch, with his wife and daughter sitting near him; that from his front yard he spoke to Badillo in regard to this dispute; that Badillo asked him to come over to his house, but he replied he had no business in his house; that he walked through the front gate and over to a telephone pole that was approximately on a line between the two places; that Badillo entered his house and came out a few minutes later with a gun stuck in his trousers; that Badillo walked out to where defendant was standing; that after a little discussion Badillo said, ''What my daughter say is the truth.'' The defendant replied ''anybody says so is a liar'' and that after a little more discussion, both drew their guns and began to fire. Mrs. Jones, a disinterested witness, testified that she saw the defendant draw a pistol and fire immediately, and that he fired before Badillo did; that the deceased backed away and went clear across his lot on the adjoining lot, and that the defendant followed the deceased and continued shooting. A number of shots were fired by both parties during the time Badillo was retreating, and the testimony of the autopsy surgeon indicates that he was instantly killed by the last shot.

The defense contended that the deceased was the first to draw his weapon and fire, and that the defendant fired only in self-defense. While the jury has, by its verdict, found to the contrary, it is argued that the evidence upon which they so found is so unsatisfactory and so far from convincing that the issue might well have been determined the other way, and therefore, that even the slightest expression from the court, or the slightest attitude manifested by the court toward the theory of the defense, became so important, under the circumstances as to constitute reversible error. The appellant does not attack the sufficiency of the evidence, other than making the claim just mentioned. He sets forth four assignments of error, all in connection with instructions given, or the manner in which they were given. While we do not regard the evidence as not convincing, or as being in the least unsatisfactory, we have given careful consideration to the points raised.

█ The first objection is, that after the court had instructed the jury as to the doctrine of reasonable doubt, and the presumption of innocence, it then instructed them as

follows: "The rule of law which clothes every person accused of crime with the presumption of innocence and imposes upon the state the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone to escape, who is, in fact, guilty of crime." It is argued that the court, after correctly instructing the jury upon these rules of law, thus used argumentative and persuasive language, which had a tendency to minimize to the jury the importance of these rules; that this had a tendency to suggest to the jury that this particular case was one where caution should be exercised in applying said rules of law; and that this even suggested to the jury the belief on the part of the court that the defendant was guilty. The entire instruction, of which the language complained of was only a part, is as follows:

"The rule of law which clothes every person accused of crime with the presumption of innocence, and imposes upon the state the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone to escape who is in fact guilty of crime. But it is a humane provision of the law, intended, so far as human agency can, to guard against the danger of any innocent person being unjustly punished."

Appellant has not complied with rule VIII of the rules governing this court, which provides for the setting forth of all other instructions given upon a certain subject, when one instruction upon that subject is claimed to be erroneous. However, the record shows that the court gave an instruction substantially in accordance with section 1096 of the Penal Code, and in addition, gave a number of other instructions frequently given on this subject in the past, and which are not attacked by appellant. While complaint is made of the first portion of this instruction, it is but the complement of the second portion, which expressly tells the jury that the purpose of these rules of law is to prevent an innocent person being punished, and the entire instruction could not mislead the jury, and is not prejudicial to the defendant. All of the instructions, taken together, show that the jury was fully and properly instructed on the question of reasonable doubt and presumption of innocence.

The second instruction complained of is as follows:

"But if the intent exists and the killing is unlawful, it will be murder, even though done upon a sudden quarrel or heat of passion, unless there was adequate provocation. In considering what is regarded as such adequate provocation, it is a settled rule in law that neither provocation by words only, however, opprobrious, or contemptuous, or insulting actions, or gestures, without an assault, upon the person, nor any trespass against land or goods, are of themselves sufficient to reduce the offense of an intentional homicide with a deadly weapon from murder to manslaughter."

After reading this instruction the court said: "I think I will read that last paragraph again," after which the instruction was repeated. Appellant contends that if the jury was satisfied that the defendant had not acted in self-defense, they might still have believed that the killing was done in the heat of passion, upon a sudden quarrel and upon adequate provocation, and have reduced the offense to manslaughter, and that the effect of repeating this instruction was to suggest to the jury that, in the court's opinion, no adequate provocation had been shown in this case. This instruction was preceded by the following instruction:

"And when the mortal blow, though unlawful, is struck in the heat of passion, excited by a sudden quarrel, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent, and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and malicious intent which is an essential element in the crime of murder."

These instructions did not go to the guilt or innocence of the defendant, but to the degree of the crime, and they properly stated the law. (*People* v. *Turley*, 50 Cal. 469; *People* v. *Jones*, 160 Cal. 358 [117 Pac. 176].) The jury was fully instructed as to the definition of murder in the first degree, murder in the second degree, and manslaughter, with appropriate definitions and the distinguishing characteristics of each. There is nothing in the record to show that the re-reading of the instruction was done for the purpose of emphasis, and the same may well have occurred because of some disturbance, or other condition that made it doubtful whether the jury had heard it. In the absence of anything to show the contrary, it must be pre-

sumed that the court had good reason for its action, and the inference cannot be drawn that the court's purpose in re-reading the instruction was to give undue emphasis to the same. Furthermore, the court instructed the jury as follows:

"In preparing these lengthy instructions there is more or less repetition of the same thing. I have tried to avoid that as much as possible, but it does not seem to be possible, and so, as I say, you will find or perhaps have already observed and will have observed in discussing that matter that some propositions of law have been repeated and others have not. That should not have any significance whatever. These instructions that have been repeated have been so repeated by mistake, and so the mere fact that one or more instructions has or have been repeated should have no weight with you whatever. If the proposition of law is stated once, that is sufficient, and if the same thing is said five or six times that does not make this any more important than any other because of its having been repeated." •

The court also fully instructed the jury that they were to disregard any expression, or inference therefrom, that might seem to indicate an opinion about the facts, on the part of the court, and that the question of the guilt or inno-cence of the defendant was for the jury alone. If any error could be inferred from the mere fact that the record shows this instruction was repeated, this was cured by these other instructions.

■ Error is next claimed in that the court gave the following instruction:

"Therefore, when one person assails another violently with a dangerous weapon, likely to kill, and it does in fact, destroy the life of the party assailed, the natural presump-tion is that such assailant intended death, or other great bodily harm, and in the absence of evidence to the contrary, this presumption must prevail," which is stated to have been in a paragraph which immediately followed a paragraph in which appeared the following: "In determining the inten-tion of the defendant at the time of the transaction com-plained of, it is important to consider the means used to accomplish the killing."

The claim is made that, in thus placing the two state-ments in such proximity, the court was suggesting to the

jury that, in fact, the defendant here had assailed the deceased, that the natural presumption was that the defendant intended to kill Badillo, and that there was no evidence to the contrary. This contention is without merit. The entire instruction, parts of which are complained of, is as follows:

"In determining the intention of the defendant at the time of the transaction complained of, it is important to consider the means used to accomplish the killing. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots, nor lunatics, nor affected with insanity.

"A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to attend all the natural, probable and usual consequences of his own acts. Therefore when one person assails another violently with a dangerous weapon, likely to kill, and which does in fact destroy the life of the party assailed, the natural presumption is that such assailant intended death, or other great bodily harm, and in the absence of evidence to the contrary this presumption must prevail."

The instruction, as given, properly states the law. (*People* v. *Jones, supra;* Pen. Code, sec. 21.) It contains no suggestion on the part of the court, as to the facts.

The last assignment of error is in connection with the alleged reluctance of the court to re-read certain instructions concerning self-defense, which were requested by the jury. After the jury had retired to deliberate upon their verdict, they returned into court requesting that further instructions be given them, defining first degree murder, second degree murder, and manslaughter. The court thereupon repeated those portions of his instructions previously given, containing the definitions requested by the jury. Thereafter, a juror stated: "Some of the members of the jury have asked that the Court give us further instructions as to the plea of self-defense, and of the legal meaning of the term 'malice.'" The attorneys stipulated that those additional instructions might be given, whereupon the court said: "Of course, the whole thing is—I can give the definition of the term 'malice,' which is right before me here, but so far as self-defense is concerned that is in every part of

the instructions; so I would probably have to read the whole instructions.'' After a few more statements, between both counsel and the court, the court stated: ''Well, I think that it would not serve any useful purpose to have all of the instructions on self-defense read over again, because that constitutes a large proportion, and run through the whole instructions bearing on that question. Some of them were presented by the defendant's counsel and some of them presented by the People's counsel.'' Defendant's attorney then noted an exception to the refusal of the court to re-read those instructions to the jury. The court then replied in part, as follows: ''Well, I am inclined to be accommodating, but I think that in view of the situation I will not give all the instructions over again.'' After then repeating instructions on malice, the court then said: ''And I think that is all I will repeat here now, because of course the jury has had all of this and it is just a question of whether it would be in any way to advantage to go over it all again, which would take me a long time.'' Upon counsel for defendant again insisting that instructions on self-defense be re-read, the court indicated that it was his understanding that the jury desired further explanations upon the subject of defense, more specific than the ones previously given. A juror then stated that what was desired was the re-reading of those portions of the court's instructions which relate to self-defense. The court then replied: ''If all of you want those instructions read here on self-defense, of course, it will take an hour or so, so I will stay here and give it, if that is the wish of all the jurors.'' In reply to a question by the court, as to the exact request of the jury, a juror replied: ''Yes, the jury asked me, as foreman of the jury, to request the Court to read again that portion of his instructions with reference to self-defense. Not the entire instructions, but that portion of the instructions that cover self-defense.'' The court then replied: ''Well, I don't know whether I can find those or not. Possibly we better come back here after the bailiff has taken the jury out to dinner. In the meanwhile, I can sort out those that relate to self-defense, so that if all the jurors want that done, I will give that. Of course it was not requested originally, but it is possible that I can sort out the most of these.'' Thereafter, the court repeated the instructions

theretofore given, upon the subject of self-defense. The argument is made that, in view of the promptness with which the court repeated the instructions requested as to the definition of first degree murder, second degree murder and manslaughter, his apparent reluctance to instruct the jury upon the subject of self-defense could only be taken by the jury as an indication that the court felt those instructions were of relatively little importance, and that this had the effect of minimizing their importance in the minds of the jurors. And, further, that the court thus disclosed to the jury that his reluctance to give the instructions in question was because they had been prepared by defendant's counsel. It is insisted that this was an indication to the jury of the opinion of the court upon the evidence and the guilt of the defendant, and that the same was prejudicial to him.

The instructions given by the court were somewhat lengthy, taking up more than thirty closely written pages in the reporter's transcript. There were a number of instructions relating to self-defense, and these were interspersed through the other instructions. We have carefully read this portion of the transcript, and find nothing therein to indicate that the reluctance of the court to read these particular instructions again was occasioned by anything other than a feeling on the part of the court that it would take too long to segregate them, and possibly a desire to avoid the difficulty of re-reading such instructions without repeating a number of other instructions, with which they were interwoven. We feel there is nothing in the record to show that the court considered them unimportant, and that the court's action in this regard did not indicate to the jury the court's opinion as to whether or not self-defense had been proved. Under the circumstances, the instructions in question should have been re-read to the jury, and in our opinion the error that otherwise would have appeared was cured when they were again read to the jury by the court. The court also instructed the jury as follows:

"I have not expressed or intended to express, nor have I intimated or intended to intimate, any opinion as to what facts have been established or what inference should be drawn from the evidence adduced, and if any expression of mine seems to indicate an opinion relating to any of these matters, such opinion you must entirely disregard."

"The court instructs the jury that rulings have been made by the court in your presence, and questions may have been asked of witnesses by the court. From such occurrences, or from anything that has occurred in the trial, you are not to infer what the opinion of the court may be as to the guilt or innocence of the accused."

The matter of self-defense was fully and completely covered in the instructions of the court, and the matters here complained of could not have misled the jury.

No reversible errors appearing, the order and judgment are affirmed.

Sloane, P. J., and Marks, J., concurred.