[Crim. No. 1200.   Third Appellate District.—April 29, 1932.]

THE PEOPLE, Respondent, v. LEROY CARSKADDON, Appellant.

Archibald M. Mull, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was charged under the provisions of section 288 of the Penal Code with the crime of lascivious conduct alleged to have been committed upon the person of a minor child who was under six-

teen years of age. The defendant admitted the perpetration of the offense as charged in the information, but pleaded not guilty by reason of insanity. A jury was impaneled for the purpose of trying that issue and rendered a verdict finding that he was sane at the time of the commission of the offense. A motion in arrest of judgment under the provisions of section 1185 of the Penal Code was made on the ground that the information fails to state facts sufficient to constitute a public offense. This motion was denied. The defendant thereupon demanded a trial as to his present sanity under the provisions of section 1201 of the Penal Code. This motion was also denied. The defendant was then sentenced to state prison at Folsom for the term prescribed by law. From this judgment of imprisonment the defendant has appealed.

The appellant contends (1) the information is fatally defective for the reason that it fails to charge that the felonious acts were performed with lewd or lascivious intent, (2) the court failed to appoint two impartial medical alienists as required by section 1027 of the Penal Code to examine the accused with regard to his sanity, (3) the court erred in permitting a nonexpert witness to testify regarding the mental status of the defendant, (4) the court erred in denying the defendant's motion for a trial upon the issue of his present sanity as provided by section 1201 of the Penal Code, and (5) the verdict respecting the sanity of the defendant at the time of the commission of the offense with which he is charged is not supported by the evidence.

The information sufficiently charges a public offense under the provisions of section 288 of the Penal Code. It omits the use of the words "lewd and lascivious". But it includes language which is equivalent, and which leaves no doubt regarding the nature of the offense charged. The information describes the acts by means of which the defendant is charged with perpetrating the offense, and alleges that they were performed "upon and with the body" of the minor child "with intent then and there arousing, appealing to and gratifying the lust and passion of sexual desires". Such acts as are here described which are performed with the intent assigned are necessarily lewd and lascivious. The

omission of those words are therefore harmless. Section 958 of the Penal Code provides that, ''Words used in a statute to define a public offense need not be strictly pursued in the indictment or information, but other words conveying the same meaning may be used.''

The record indicates that the court complied with the requirements of section 1027 of the Penal Code in the appointment of alienists to investigate the mental status of the defendant with relation to his plea of insanity. That section merely requires the court to ''appoint two alienists, at least one of whom must be from the medical staffs of the state hospitals'', who shall ''examine the defendant and investigate his sanity, and . . . testify . . . (in regard thereto) in any proceeding in which the sanity of the defendant is in question''. It is then provided that the alienists so appointed may be called and examined by either of the parties to the action, or by the trial judge himself. The object of this statute is to obtain expert evidence of the mental responsibility of a person who is accused of a crime, which shall be entirely free from any possible bias which may influence the employment of an alienist by either party to the action. In the present case the court appointed two medical experts, one of whom is the assistant superintendent of the Napa State Hospital. Both alienists became witnesses at the trial. The testimony of one was favorable to the defendant. The other was unfavorable. It is now contended this unfavorable witness, who was Dr. Wilder, was a biased partisan, because he had previously examined into the mental condition of the defendant at the request of the district attorney. It does appear that this physician examined the accused in October, two months after the date of the alleged lascivious acts, and some time prior to the trial. He testified that the defendant appeared to be mentally defective and that he was a moral degenerate, but that he considered him sane and believed he understood and appreciated the nature and evil of the lascivious acts with which he was charged. He said: ''In my opinion, he was sane at the time of the commitment of the act. . . . I thought that he understood the nature and quality of the act.'' Regarding his conversation with the district attorney, he said: ''I told them that he was sane at the time of the commit-

ment of the act, *and I stuck to it.*" We may not assume the doctor "stuck to it" regardless of his honest conviction. There is no evidence that he was biased and prejudiced on account of his former employment by the district attorney. The doctor had practiced medicine for thirty years. The presumption is that he stuck to his assertion that the defendant was sane because he believed it to be true. Repeated examinations of a patient ought to give added weight to a physician's judgment regarding his sanity. At least, the credibility of the witness was a matter for the determination of the jury. ▮ Moreover, Dr. Wilder was examined as a witness at the trial without objection. A lack of qualifications on the part of the doctor was specifically waived. The attorney for the defendant said: "I will stipulate . . . Doctor Wilder's qualifications." No motion was made to strike his testimony from the record. It is too late for a defendant to object to the qualifications of a witness for the first time on appeal. The lack of qualifications of an alienist on the ground of bias is waived by failure to object to his appointment or his testimony at the trial, in the absence of a motion to strike his evidence from the record. (*People* v. *Wiley,* 111 Cal. App. 622 [295 Pac. 1075].)

▮ The denial of defendant's motion to strike out the testimony of James Hester, regarding the sanity of the accused, is assigned as erroneous. Mr. Hester was a deputy sheriff who acted as recording clerk in the county jail where the defendant was imprisoned for four months prior to his trial. He was examined at the trial as an intimate acquaintance of the defendant under the provisions of subdivision 10 of section 1870 of the Code of Civil Procedure. It appears that he had observed the defendant every day during this period of four months. He had talked with the accused "practically every day". He watched his conduct and marked his manner of speech. Over the objection of the defendant that the evidence is incompetent, irrelevant and immaterial, and that the witness "has not shown himself to be *an expert*", he was permitted to testify that the defendant appeared to be and talked rational; that he had observed no change in that regard during the four months he had watched him, and that in his opinion the defendant was

sane. A motion to strike out the evidence of this witness on the ground that "no qualification of this man is made *as an expert*" was denied. Neither the objection to the evidence nor the motion to strike it from the record assigned the proper ground. The witness was not permitted to testify as an expert on mental disease. He was permitted to testify as an intimate acquaintance under the provisions of section 1870, *supra,* assigning his reasons for the opinion which he expressed. In determining the qualifications which render a witness competent to testify as an intimate acquaintance concerning the sanity of an individual, the trial judge has a wide discretion which will not be interfered with except for evident abuse thereof. (*People* v. *McCarthy,* 115 Cal. 255 [46 Pac. 1073].) This discretion is wisely conferred upon the judge for the reason that it is frequently difficult to determine the exact character and extent of a previous acquaintance which will qualify one to express an opinion regarding the sanity of another. The theory upon which an intimate acquaintance is permitted to testify regarding the sanity of another is that he may be so well acquainted with the patient that he is able to distinguish between traits of character and peculiarities of speech which are natural to the subject, and such unusual conduct as is likely to indicate a deranged mind. (*Estate of Carpenter,* 94 Cal. 406, 414 [29 Pac. 1101].) Moreover, the testimony of an intimate acquaintance must be founded upon related facts which furnished the reason for his conclusion. It follows that the conclusion of an intimate acquaintance regarding the sanity of another is of no greater value than the reasons which he assigns in support of his conclusion. If the reasons are valueless, the conclusion falls of its own weight. We are not prepared to say the witness Hester was not qualified to testify under the provisions of section 1870, *supra.* At least it does not appear the court abused its discretion in passing upon his qualifications.

The refusal of. the court to suspend the pronouncing of judgment and impanel another jury to try the question of the defendant's sanity at that time, under the provisions of sections 1367 and 1368 of the Penal Code, is assigned as error. We are of the opinion this assignment of error is without merit. The alleged offense of lascivious conduct oc-

curred August 26, 1931. The defendant was immediately apprehended and detained in the county jail until the time of his trial, which occurred on December 28th and 29th. The verdict was rendered against him on the last-mentioned date. The cause was continued to January 12, 1932, at the request of the defendant, for the purpose of presenting a motion for new trial. The cause was tried before the Honorable J. R. Hughes, as judge of the superior court. During the interval between the time when the verdict was rendered and the time which was set for pronouncing sentence, Judge Hughes died. Judge Martin I. Welsh was appointed to succeed the late Judge Hughes and presided at the hearing of a motion for a new trial and at the motion to suspend judgment and examine into the present sanity of the defendant. Judge Welsh was not present during the trial of the case upon its merits. The defendant was present in court during the entire proceedings. The motion for new trial was heard upon affidavits, argued at length and denied. Not until the denial of that motion was the present sanity of the defendant suggested to the court. No evidence was adduced upon the motion to suspend judgment and examine into the sanity of the accused under section 1367, *supra*. It appears that the defendant's counsel relied upon the record of the trial which discloses a sharp conflict of evidence regarding the sanity of the defendant, in support of his motion. He said: "I feel that we are amply justified, from the transcript as it appears [in asserting] that the defendant at this time is insane." Nothing in the conduct or appearance of the defendant as he presented himself in court during the proceedings was suggested as reasons for believing he was presently insane. Indeed, he was not called as a witness in his own behalf at the trial or during the subsequent proceedings. Within fourteen days from the time the motion was made to examine into his present mental condition, a jury had pronounced him sane. The mere fact that there is a conflict of evidence regarding the issue of his sanity is not sufficient ground upon which an appellate court may hold that a trial judge has abused its discretion in denying a motion to suspend judgment and again try a defendant upon the issue of his present sanity. (*People* v. *Croce,* 208 Cal. 123,

131 [280 Pac. 526].) Apparently there was nothing in the appearance or conduct of the defendant as he presented himself in court which led the judge to entertain a doubt as to the defendant's present sanity. In denying the motion the judge said: ''There has been no showing made to the court at this time that the defendant is at this time insane. Therefore, the court has no doubt. . . . It must indulge the presumption that he is sane.'' The physician upon whom the defendant chiefly relied to establish his insanity, at the trial, was Dr. Scanland, who was a member of the medical staff of Napa State Hospital. Dr. Scanland saw the defendant for the first time the day before the trial of the cause. The doctor testified that the defendant was afflicted with dementia praecox, which is a permanent deterioration of the brain tissue accompanied by hallucinations. It is a progressing and incurable type of insanity. While it is true the issue of insanity which was decided by the jury applied to the mental condition which existed August 26th, when the crime was committed, rather than the mental status as it existed at the time of the trial, still the record discloses the fact that the alienists who supported the defendant's claim of insanity based their testimony on the theory of permanent insanity which it is unreasonable to presume would make any substantial progress during the few days which elapsed after the rendering of the verdict. In view of the recent verdict on December 29th, which found the defendant sane, it seems absurd, in the absence of evidence to the contrary, to assume there was any substantial change in the defendant's mental condition within the intervening fourteen days, which would raise any additional doubt as to his sanity at the time of pronouncing judgment. The question as to a defendant's sanity, so as to require the trial of that issue under the provisions of section 1367 of the Penal Code, before pronouncing sentence, after the conviction of a crime, rests in the sound discretion of the court. (*People* v. *Croce*, 208 Cal. 123 [280 Pac. 526].) The rule is not otherwise even though the judge who passes upon the motion to suspend judgment did not preside at the trial of the cause at which the accused was convicted. The record in this case presents no abuse of discretion on the part of the court, in denying the motion.

■ Finally, it is asserted the verdict of the defendant's sanity at the time of the commission of the offense is not supported by the evidence. There is a sharp conflict of evidence regarding this issue. Dr. Scanland, who testified positively that the defendant was insane and irresponsible, was one of the alienists appointed by the court. He was supported in this conclusion by Dr. Howard. Standing alone, the evidence of these two physicians, regarding the insanity of the defendant, is very convincing. Upon the contrary, two other alienists, to wit, Doctors Wilder and Barrette testified that the defendant was sane, and in their judgment understood the nature and vice of the lascivious acts of which he was convicted. Two nonexpert witnesses also testified to facts strongly corroborating the theory that the defendant was sane. Regardless of what a reviewing court may think about the wisdom of a verdict, it has no power to weigh the evidence upon an issue regarding which a substantial conflict exists. There is a conflict of evidence as to the sanity of the defendant. The verdict of the jury is therefore controlling.

The judgment and the orders are affirmed.

Preston, P. J., and Plummer, J., concurred.