[Crim. No. 4127. In Bank.—August 23, 1938.]

THE PEOPLE, Respondent, v. ALLAN D. BOGGS, Appellant.

Stanford G. Smith, W. E. Foley, John D. Foley and James W. Foley for Appellant.

U. S. Webb, Attorney-General, Wilmer M. Morse, Deputy Attorney-General, and Benj. B. Knight, District Attorney, for Respondent.

WASTE, C. J.—In an information filed by the district attorney of Santa Cruz County, the defendant was charged with the murder of Sally Boggs, his wife. He entered a dual plea of not guilty and not guilty by reason of insanity. Upon the conclusion of the trial on the general issue, the jury returned a verdict finding defendant guilty of murder of the first degree, without recommendation. Trial was then had on the issue of defendant's sanity at the time of the commission of the homicide, which issue the jury likewise resolved against him. Defendant was sentenced to pay the extreme penalty, whereupon he noticed this appeal from the judgment and order denying a new trial.

Nowhere in his briefs does the defendant challenge the sufficiency of the evidence on either issue. In fact, the briefs, including those filed on behalf of the People, are singularly free of even a summary of the facts and circumstances surrounding the commission of the homicide. Obviously, the

state of the evidence has a material bearing upon whether prejudice resulted from any errors that may be found to have been committed during the trial. However, in our consideration of defendant's several grounds of appeal having to do with the giving and refusing of instructions on each issue and asserted errors in rulings on the evidence during the trial of the sanity issue, the entire transcript, including the evidence and the instructions, has been examined. We do not find therein anything approximating prejudicial error such as is contemplated by section $4\frac{1}{2}$ of article VI of the Constitution to warrant a reversal. On the contrary, the record discloses an abundance of substantial evidence supporting the jury's implied findings that the defendant was the perpetrator of a cold-blooded, premeditated murder committed at a time when he was fully capable of distinguishing between right and wrong—the established test in this state of legal sanity. True, there are conflicts in the evidence, but these the jury has resolved against the defendant.

Briefly, the evidence discloses that the defendant had some discussion in the nature of a slight quarrel with his wife during the early part of the day preceding the day of the homicide over her refusal to remain at home and entertain guests he had brought there. She, instead, went on a shopping tour and at the end of the day repaired to a friend's home, where she had dinner and planned to remain overnight. During the course of the evening, there were telephone conversations between defendant, his wife and her hostess, which apparently were not of a friendly or pleasant character. Later in the evening, and after his guests had retired for the night, the defendant left his home and went to a hotel bar, where he imbibed intoxicating liquor. While there he borrowed a pistol and four shells from the bartender. Shortly thereafter he appeared at the home of his wife's hostess. The gate to the grounds being closed, he climbed or jumped over the fence that surrounded the premises. He then entered the house by way of the kitchen and, contrary to the wishes of the butler, whom he first met, he proceeded through the house, passing through or near the occupied bedroom of the hostess and other guests until he arrived at the door of the bedroom then being occupied by his wife and her twelve-year-old son by a former marriage. Defendant was apparently unaware that her son had been brought to the house. After

demanding to know who was using the room with her, the defendant fired four shots at his wife, some of which struck their mark and proved fatal. The shooting occurred between 1 and 2 o'clock in the morning. Defendant then apparently attempted to shoot himself but the entire contents of the gun had been discharged at the decedent. He then immediately departed the scene of the shooting and was arrested later in the morning as he slept in a hotel room.

While on the stand in his own defense, defendant testified that he did not shoot the decedent but that the gun was first accidentally discharged in a scuffle with her over its possession and that it was again accidentally twice discharged as his attention was arrested by other guests. This version of the shooting is diametrically opposed to the defendant's statements freely and voluntarily made at the time of his arrest and later in the office of the district attorney. Upon each of these occasions he definitely stated that he deliberately shot at the decedent. To the arresting officer he declared: ''I went up there to kill her and I killed her and that's that. She had it coming for a long time . . . '' That defendant intentionally and deliberately shot his wife at a time when there was no scuffling for the gun, is borne out by the testimony of the butler and other persons in the house at the time who were eye-witnesses to the entire episode.

As already indicated, we are satisfied from an examination of the entire evidence that defendant perpetrated a deliberate, premeditated homicide at a time when he was fully capable of appreciating the nature and character of his act. In view of this, and our further conclusion that none of the asserted errors present anything of a prejudicial character, we do not intend to discuss in minute detail the many assignments of error advanced by the defendant.

Defendant first challenges part of instruction number 34 having to do with manslaughter. The language complained of is but part of a long instruction wherein the court, for the guidance of the jury, repeated substantially *verbatim* the provisions of sections 187, 189 and 192 of the Penal Code wherein are defined the offenses of murder of the first and second degree and manslaughter. The latter portion of the instruction, even if inaccurate, could not have prejudiced the defendant. Particularly is this so, in view of the jury's verdict finding him guilty of murder of the first degree. (*People*

v. *O'Neal,* 67 Cal. 378 [7 Pac. 790]; *People* v. *Ferugia,* 95 Cal. App. 711, 718 [273 Pac. 99].) In other words, judging from its verdict, the jury was satisfied beyond a reasonable doubt that the prosecution had established the essentials of murder of the first degree, which essentials were correctly set forth in the instructions. In *People* v. *Hampton,* 96 Cal. App. 157 [273 Pac. 854], relied on by the defendant, the jury found the defendant guilty of the offense as to which the asserted erroneous instruction was given. Prejudice under such circumstances may well be imagined. In *People* v. *Carrillo,* 104 Cal. App. 586, 591 [286 Pac. 493], and *People* v. *Semone,* 140 Cal. App. 318 [35 Pac. (2d) 379], language similar to that complained of in the instruction here given was approved.

It is next urged that another portion of the same instruction precluded the jury from considering the asserted intoxication of the defendant at the time of the commission of the offense. Obviously, one instruction may not encompass all matters upon which the jury should be informed. Instructions number 37 and 38 properly informed the jury that evidence of intoxication could be considered in connection with a determination of the intent with which an act is perpetrated. Moreover, the language complained of constituted but a repetition of the provisions of section 21 of the Penal Code. In *People* v. *Vernal,* 40 Cal. App. 358, 361 [180 Pac. 825], it was held not to be error to read the section to the jury.

We find no merit in defendant's assault upon another portion of instruction number 34 to the effect that it failed to inform the jury of the necessity for the presence of malice, express or implied, to constitute the crime murder in the first degree. As stated above, the jury was elsewhere fully and correctly instructed on the essentials of first and second degree murder and that portion of the instruction here complained of could not have misled them.

Instruction number 38 having to do with intoxication and its effect upon the act and intent of a person is not subject to the criticism leveled at it. As already intimated, it correctly informed the jury on the subject. A somewhat similar instruction was approved as early as 1869 in *People* v. *Lewis,* 36 Cal. 531, and as late as 1935 in *People* v. *De Moss,* 4 Cal. (2d) 469, 474 [50 Pac. (2d) 1031].

■ Obviously, no prejudice could have resulted to the defendant from instruction number 9 in which the jury was merely informed of the right of court and counsel to comment on the evidence or the failure of defendant to explain or deny any portion thereof adverse to him. The instruction was undoubtedly based upon section 13, article I, section 19, article VI of the state Constitution and section 1439 of the Penal Code.

■ Defendant criticizes instruction 46, having to do with the burden on defendant of proving mitigating circumstances following proof by the prosecution of the commission of a homicide. We cannot agree with the defendant that this instruction is capable of an interpretation relieving the prosecution of the burden of proving malice as an essential of murder of the first degree. In effect, it properly informed the jury that when any offense of any degree was proved by the prosecution, as required by law and under the instructions, then the burden of proving mitigating circumstances was upon the defendant. ■ Defendant's further contention in connection with this same instruction that it fails to require or specify proof of the commission of the homicide *by the defendant,* is specious and lacking in merit. (*People* v. *Madison,* 3 Cal. (2d) 668, 677 [46 Pac. (2d) 159].) We must attribute some reasoning power to a jury. In *People* v. *Post,* 208 Cal. 433 [281 Pac. 618], cited by defendant, the instruction there involved was found to be prejudicial on a ground other than that here urged. (*People* v. *Madison, supra.*)

■ The defendant's next main contention has to do with the asserted erroneous refusal of the court below to give several requested instructions addressed to the trial of the general issue. We find no error in the refusal to give the three having to do with the effect of intoxication upon the act and intent of the perpetrator of an offense. As mentioned above, this subject was sufficiently covered in the instructions given. In addition, our examination of the record satisfies us that it amply supports the implied finding of the jury that defendant was not so intoxicated at the time of the commission of the act as to preclude the entertainment by him of a specific intent to take the decedent's life. Defendant's vivid recollection of the circumstances surrounding the homicide attests to the clarity of his mind at the time rather than to a bewildered mental state resulting from intoxication. Therefore,

even an improper refusal to give the instructions could not have been prejudicial.

Nor do we think the court erred in refusing the requested instruction on excusable homicide. The subject was sufficiently covered by instruction number 41 given to the jury wherein section 195 of the Penal Code, defining excusable homicide, was read. Here, again, we must ascribe some intelligence to the jury who may reasonably be assumed to know that a verdict of acquittal should follow a finding by them of excusable homicide.

No prejudice resulted from the refusal to give the requested instruction on reasonable doubt. The subject was adequately covered in the trial court's charge to the jury. The jury was instructed on the presumption of innocence, and the definition of reasonable doubt, as it appears in section 1096 of the Penal Code, was read to them. When it is considered that the court also informed the jury as to the essentials of murder of the first and of the second degree, it is not unreasonable to assume that the jury could and would ascertain and know from the charge as a whole that either offense, of the greater or of the lesser degree, would have to be established by the prosecution beyond a reasonable doubt. Any other construction would import but little intelligence to the jury.

The subject of the refused instruction as to the effect of intoxication was, as indicated above, sufficiently covered by the court and further comment thereon is unnecessary.

Defendant also urges that the court below erred in the giving and refusing of certain instructions on the trial of the sanity issue, to which assignment we now direct our attention. It is first argued that the court erred in informing the jury that while the defense of insanity, if established to their satisfaction, should commend itself to their sense of humanity and justice, nevertheless such defense should be examined "with care lest an ingenious counterfeit of this mental infirmity shall furnish immunity to guilt". Though such an instruction was approved in some of the earlier cases (*People* v. *Dennis,* 39 Cal. 625, 637), the later decisions have frowned upon it. (*People* v. *McCarthy,* 115 Cal. 255, 265 [46 Pac. 1073]; *People* v. *Ford,* 138 Cal. 140, 142 [70 Pac. 1075].) This the attorney-general concedes. However, no case has been called to our attention, and our research has

failed to reveal any, wherein the giving of such an instruction has been held to be prejudicially erroneous. In 8 California Jurisprudence, 304, section 358, the subject is summarized as follows: ''While this instruction may well be omitted altogether, as the jury may take it as an intimation by the judge of his opinion of the case on trial, it has been so frequently given and approved, that it is now established that it is not prejudicially erroneous.'' To the same effect see *People* v. *Sloper*, 198 Cal. 238, 248–250 [244 Pac. 362].

Nor do we think that a separation of the trial of the two issues under our present procedure calls for any different result. (*People* v. *Young*, 140 Cal. App. 456, 458 [35 Pac. (2d) 354].) In our opinion, the preponderance of substantial evidence in the record points to the sanity of the defendant. The alienists appointed by the court testified that in their opinion the defendant was of sound mind.

It is next contended that the cause was not tried on the theory of irresistible impulse or moral insanity and that it was therefore prejudicially erroneous for the court below to instruct thereon. The two instructions contained correct statements of the law. It has been held that the giving of inapplicable instructions, correct in the abstract, is not ground for a reversal. (*People* v. *Lawson*, 178 Cal. 722, 729, 730 [174 Pac. 885] ; *People* v. *Romero*, 143 Cal. 458, 459 [77 Pac. 163].)

We find no error in the instruction having to do with intent. With a few embellishments, it merely reiterated the language of section 21 of the Penal Code. We do not think it capable of the dire consequences attributed to it by the defendant.

Nor do we think any prejudice resulted from the trial court's reading of section 2167a of the Political Code, having to do with the appointment and certification of county medical examiners. While the reading of such section was unnecessary, we do not believe it had the effect, as urged by defendant, of impliedly informing the jury that the testimony of such medical examiners had the support of the court as against the testimony of other experts not so appointed.

During the trial, defendant produced evidence of his long-continued use of intoxicating liquor and now contends that it was prejudicial error for the trial court to refuse to give three requested instructions on settled insanity produced

by long-continued intoxication. While we are of the view that instructions on the subject might have been given without harm to either side, we are not of the view that the refusal to give them prejudiced the defendant. As stated above, the preponderance of the evidence points to the sanity of the defendant at the time of the homicide. Nor do we find therein any substantial evidence of a settled insanity resulting from the continued use of intoxicants. True, as already mentioned, defendant produced witnesses who testified to his heavy drinking over the years and an expert who testified that the defendant was suffering from a deranged condition of mind and an amnesia, total or partial, produced in part by long use of intoxicants. But, as we have already stated, the preponderance of the evidence, in our opinion, points to his sanity. In addition, the jury was fully and correctly instructed on the subject of insanity generally. Among other things, they were told that insanity "means such a diseased and deranged condition of the mental faculties as to render the person incapable of distinguishing between right and wrong in relation to the act with which he is charged." Other similar charges were given to the jury. Such instructions necessarily include any and all forms of insanity or deranged mental condition, regardless of the inducing cause, which preclude a person from distinguishing between right and wrong. In *People* v. *Keyes,* 178 Cal. 794, 797, 798 [175 Pac. 6], it is declared that "the court gave the jury full instructions on the subject of the defense of insanity from whatever cause proved. It was not required to designate any particular phase of insanity". There, as here, it was urged that prejudicial error resulted from the failure to instruct on settled insanity resulting from continued use of intoxicants.

▉ Under his next general assignment, the defendant urges that the trial court erred in certain decisions of law during the trial of the sanity issue. His first point is that the court below erred in excluding from evidence the opinions given by five witnesses, whose depositions were taken in the state of Michigan and produced upon the trial, as to the sanity of the defendant. The opinions were excluded on the ground that they invaded the province of the jury. A liberal ruling would have permitted the introduction of the answers or opinions in evidence. However, there are several circumstances that militate against any prejudice resulting there-

from. Most of the persons had not seen defendant for some time prior to the commission of the homicide and his mental condition at that time was the issue before the jury. In *People* v. *Overacker*, 15 Cal. App. 620, 630 [115 Pac. 756], it is said that ''the court had discretion to exclude testimony which was remote in point of time from the date of the homicide''. Moreover, practically the entire deposition of each of the five persons was admitted in evidence wherein were detailed by the deponents the circumstances they could recall in connection with defendant's conduct. It frequently has been held that the opinion of an intimate acquaintance has no greater evidentiary value than the reasons underlying it (*People* v. *Coen*, 205 Cal. 596, 614 [271 Pac. 1074]), and inasmuch as the reasons were here before the jury, the failure to permit the opinions in the evidence could not have been damaging. In addition, and by way of final disposition of this point, it appears, as matter of fact, that the opinion of each of the deponents as to defendant's sanity was in some manner brought out before the jury, either in answer to some other question or on cross-examination. The deponent McSweeney stated in one place that defendant ''acted and spoke in a manner which were not the speech and actions of a man in a sane mental condition''. Again, that defendant's ''mentality in that respect had definitely faded''. On cross-examination the witness answered ''yes'' to a statement that he had ''related several incidents here from which you draw the conclusion that Mr. Boggs is insane, is that correct?''

The deponent Buckheimer stated in one part of his deposition that the defendant was ''irresponsible'' and that ''there was something screwy in his mind''.

Among other things, the deponent McCauley stated that defendant ''was not of normal mentality''.

The deponent Carney stated on cross-examination that defendant ''wasn't acting normal'' and that he did not think defendant appreciated the difference between right and wrong.

On cross-examination, the deponent Kuhn declared that he thought the defendant ''was crazy''. For the foregoing several reasons we conclude that no prejudice could have resulted from the rulings above mentioned.

 We find no error in the ruling of the trial court permitting the jailer to testify as to defendant's conduct and mental condition. The witness testified he knew the defend-

ant for at least two years. Whether one is an intimate acquaintance and competent to discuss the sanity of another is a matter for the trial court to determine in the exercise of a sound discretion. (*People* v. *Niino,* 183 Cal. 126, 130 [190 Pac. 626] ; *People* v. *Carskaddon,* 123 Cal. App. 177, 181 [11 Pac. (2d) 38].)

▆ We do not find any error in the ruling which permitted the prosecution during the cross-examination of a defense expert witness to introduce testimony given by the defendant in a negligent homicide case pending against him, and which arose subsequent to the homicide here involved. The same was admitted under the rule "that it is 'competent to prove the acts, conduct and declarations of the defendant, not only at the time of, but also within a reasonable time before and after, the commission of the alleged criminal act, if they appear to have any tendency to show his mental condition when the crime was committed' ". (*People* v. *Kimball,* 5 Cal. (2d) 608, 610 [55 Pac. (2d) 483], citing 8 Cal. Jur., p. 51, sec. 162.) It would also serve to test and, if possible, to break down the testimony of the expert witness then under cross-examination.

▆ In conclusion, we do not find that the court below or the district attorney were guilty of prejudicial misconduct in the two respects assigned by defendant. Moreover, in the absence of objection or request for admonition to the jury at the time, the errors, if such, may not now. be urged. (*People* v. *Harris,* 219 Cal. 727, 731 [28 Pac. (2d) 906] ; *People* v. *Weeks,* 104 Cal. App. 708, 713 [286 Pac. 514] ; 8 Cal. Jur. 510, sec. 522.)

Other points not mentioned herein do not call for discussion. Our examination of the cause and the authorities has failed to reveal anything requiring a reversal.

The judgment and order are, and each is, affirmed.

Seawell, J., Shenk, J., Curtis, J., Edmonds, J., Houser,. J., and Langdon, J., concurred.

Rehearing denied. Houser, J., voted for a rehearing.