Filed 3/25/16  P. v. Martinez CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C077727 |
| Plaintiff and Respondent, | (Super. Ct. Nos. NCR89077, NCR89078, NCR89305, NCR89616) |
| v. | |
| FELIX MARTINEZ, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the nonpublished opinion filed herein on March 9, 2016, is modified as follows and appellant Felix Martinez's petition for rehearing is denied:

1

1.     At page 2, at the end of the first sentence of the first paragraph of the Factual and Procedural Background, which reads, "The facts underlying the offenses defendant committed in August and October are not material to his arguments on appeal, and we therefore omit them.", add the following footnote 2 (with subsequent footnotes renumbered accordingly):

> **2** The fact we do not summarize these offenses does not preclude defendant from relying on the record, in any future petition for review, to make an argument regarding undue prejudice in connection with the October 2013 incident in support of a claim of error.

2.     At page 2, change the parenthetical in the second sentence of the first paragraph of the Factual and Procedural Background, which reads, "Our factual focus is on the December 2013 assault in the jail (case No. NCR89078—count V).", so that the sentence now reads:

> Our factual focus is on the December 2013 assault in the jail (case No. NCR89305—counts I, II and III).

3.     At page 3, at the end of the fifth sentence of the last, partial paragraph, which reads, "The cellmate had blood on his hands; defendant was covered with blood but uninjured.", add the following footnote 4 (with subsequent footnotes renumbered accordingly):

> **4** In his petition for rehearing, defendant requests that the opinion be more detailed about the precise manner in which he was covered with blood. This is not the same as saying that our statement of facts is inaccurate; nothing prevents defendant from citing to the exact manner in which his appearance is described in the record in any future petition for review.

4.     At the top of page 13, change the last sentence of the first paragraph (which is the last paragraph of part 6.0 of the Discussion), so that it now reads:

We will strike the enhancements imposed on counts IV (case No. NCR89078), VI, VII and VIII (case No. NCR89077).

5.     At page 13, change the second sentence of the Disposition, which reads, "The on-bail enhancement for count VI is stayed.", so that it now reads:

> The on-bail enhancements for counts IV, VI, VII and VIII are stricken.

This modification effects a change in the judgment.

BY THE COURT:

<u>         HULL            </u>, Acting P. J.

<u>         BUTZ            </u>, J.

<u>         DUARTE        </u>, J.

# <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C077727 |
| Plaintiff and Respondent, | |
| | (Super. Ct. Nos. NCR89077, NCR89078, NCR89305, NCR89616) |
| v. | |
| FELIX MARTINEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Felix Martinez of all charges in an information that consolidated the allegations of four complaints (apparently without consolidating the four cases) involving events in August, October, and December 2013, which included unlawful possession of a firearm and ammunition, an attack on a coworker on the street, a failure to appear, and an attack on a fellow jail inmate; defendant had previously admitted

1

the various special allegations that were attached to the nine counts.  The trial court sentenced defendant to state prison for a term in excess of 34 years.[1]

To reorder his claims thematically, defendant contends the trial court erred in allowing an expert witness to offer an opinion on why various gang eyewitnesses testified as they did; in striking the response of a witness as irrelevant; in failing to instruct on the evaluation of expert testimony; in failing to fashion an instruction on the elements of failure to appear; in instructing on the use of defendant's prior convictions in assessing his credibility; and in imposing multiple on-bail enhancements for a single period of "own recognizance" (OR) release.  The People concede the latter point.  We agree that the conviction for failure to appear (case No. NCR89616—count IX) must be reversed. We shall thus reverse in part and otherwise affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the offenses defendant committed in August and October are not material to his arguments on appeal, and we therefore omit them.  Our factual focus is on the December 2013 assault in the jail (case No. NCR89078—count V).

Defendant's cellmate (who was still in jail at the time of defendant's trial) testified defendant was a member of a Los Angeles subset of an umbrella criminal gang;[2] the cellmate was a member of a different local subset.  Defendant negotiated to obtain the role of "shot caller" in the jail after its previous holder was released, a position to which

---

[1] Defendant's contentions on appeal do not for the most part require us to spell out the particulars of his convictions and enhancements or his sentence.  We will incorporate the pertinent components in the Discussion.

[2] The gang expert first became aware that defendant was living in Tehama County during a parole sweep of gang members in 2004 or 2005.  Defendant owned property locally, and did not involve himself directly with the local subsets of the umbrella gang because this would have diminished his stature as a Los Angeles member.

inmate members of the various subsets of the umbrella gang owed obedience regardless of defendant's out-of-town affiliation. Failure to heed his orders would result in discipline, which could be anything from a beating to a stabbing.

There was a power struggle occurring between defendant and a rival inmate, who had also claimed the role of shot caller but was falling out of favor with fellow gang members. On Christmas Day, defendant told his cellmate that they would be disciplining the victim. The victim had not heeded a directive to disregard the rival inmate, who was a friend of the victim. On the following morning, there was an announcement that there would be yard time. Defendant and his cellmate went to the victim's cell. (As members of the same gang, the inmates were released to participate as a group in activities such as yard time.) At defendant's direction, the cellmate entered the victim's cell first and held him in a bear hug, rolling him to the floor. Defendant had said that he intended to stab the victim's face and cut out his eyes. As the cellmate watched, defendant swung overhand about a dozen times, striking the victim's face. The victim called defendant by his nickname and asked why he was doing this. As defendant was being taken away from the cell, he shouted to the nearby rival inmate that the rival would be next.

The cellmate acknowledged that his act of testifying would not be acceptable at all to his gang, which would "green light" him for violent retaliation. He had dropped out of the gang after the incident and was in protective custody.

A guard responded to the attack. He pulled the cellmate out of the victim's cell and told him to get on the ground. The cellmate did not immediately comply with the order. The guard also ordered defendant to get on the ground; defendant complied, and the guard handcuffed him. The cellmate had blood on his hands; defendant was covered with blood but uninjured. The victim's face was bleeding profusely; it appeared there was a cut on his right eyelid. At the hospital, the victim purported not to be able to identify his assailants; when the guard provided him with their names, the victim simply

3

said "Those fuckers."  A piece of a bloody pencil was retrieved from the toilet next to which defendant's cellmate had been standing; other parts of it were on the floor and on a table next to the toilet.  The victim suffered a one-centimeter cut to his right eyelid and corneal abrasions in both eyes.

Another inmate who was a former member of another East Los Angeles subset of the umbrella gang had received a message from defendant (with whom he was familiar "from the street" in Corning) directing him to join in an attack on the victim and the rival inmate.  Because he considered himself a dropout from the gang since 2005, he did not comply.  The former gang member's cell was one level up and across from the victim's cell.  He could see the front half of it.  On the morning of the attack, he saw defendant and his cellmate go into the victim's cell, and could hear the victim screaming.  He heard the victim calling defendant by his nickname and asking why he was attacking him.  When the guards arrived, defendant's cellmate came out of the cell and lay down on the floor, at which point other guards used a Taser on him.  He thought he heard defendant warn the rival inmate that the rival would be next while the guards were taking defendant away.  The former gang member also acknowledged he was at risk of retaliation both because he did not obey defendant, and because he was testifying against him.

The victim stonewalled.  He denied knowing anyone with the name of defendant, defendant's cellmate, the former gang member, the rival inmate, or the captain in charge of the jail who interviewed him in January 2014.  He at first acknowledged recognizing defendant as someone he had seen in the jail, though later testified that he had never seen defendant before.  He did not know anyone with defendant's nickname.  He did not have anything to say about his injury.  He was not a member of a gang or familiar with any gang.  He denied being afraid to testify.

The jail captain had testified multiple times as a gang expert.  He confirmed that the former gang member had been documented as a gang dropout, and that one could see

4

the front portion of the victim's cell from the vantage point of the former gang member's cell. He recalled being told of defendant threatening the rival inmate while being taken away (a threat that the jail staff took seriously enough to transfer the rival to a jail in another county), even if this was not reflected in the written reports. A shot caller does not ordinarily inflict discipline personally, but the captain thought defendant did so to emphasize his control over the unit. Although he was aware of conflict among the gang members in the unit, he had previously been under the impression that the rival inmate was the shot caller (albeit with waning power), and only learned after the incident of defendant's holding that status. In the captain's opinion, the victim testified in a manner consistent with the way any gang member called as a witness would testify.[3] Given that the victim had previously interacted with the various witnesses, it would be "strange" for him to claim that he did not know them. It is uncommon for gang members such as defendant's cellmate and the former gang member to give testimony in support of the prosecution.

Defense counsel argued in closing that the cellmate was the actual assailant responsible for the attack on the victim, and was part of an attempt to deflect blame to defendant. Counsel contended defendant was not really the shot caller of the unit.

## DISCUSSION

### 1.0 The Jail Captain's Testimony About the Gang Witnesses Was Proper

Defendant argues it was error to allow the jail captain to express an opinion about the manner in which the inmate gang witnesses testified. He claims this was "effectively" an inadmissible opinion on the truthfulness of these witnesses. We disagree.

---

[3] The trial court overruled defense counsel's objection to this testimony.

As with evidentiary rulings generally, the admission of expert testimony is subject to the trial court's reasonable discretion. (*People v. Nicolaus* (1991) 54 Cal.3d 551, 582.) The behaviors of gang members are properly the subject of expert opinion when these are counterintuitively beyond common experience. (*People v. Gardeley* (1996) 14 Cal.4th 605, 617.)

The jury heard testimony from a victim who defied logic in claiming that he lacked any knowledge about the assault on him, or fellow inmates he saw on a daily basis. It may be that jurors who are well versed with the system of criminal justice could correctly attribute this to the prison code of silence that prevailed even before the present predominance of gangs, but it is nonetheless behavior that could be inexplicable to other jurors. In this circumstance, it was not an abuse of discretion to allow expert testimony to explain that the victim's testimony is typical of a gang member. (In this respect, it is similar to an expert who explains, pursuant to Evidence Code section 1107, why a witness might recant a statement in a domestic violence case.) Ideally, the People should have elicited this opinion in the form of a hypothetical gang witness rather than the specific victim in this case. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) But defendant did not object on this basis, and in any event we cannot fathom that a jury would have reached a result more favorable to defendant if presented with this testimony through the means of a hypothetical question.[4] Additionally, the captain never expressly stated an opinion that the victim was being *untruthful* (contrary to defendant's assertion), just that the victim testified in a stonewalling manner typical of other gang witnesses.

The same reasoning applies to the jail captain's opinion that it is rare for a witness who is a member of a gang to testify on behalf of the prosecution. Moreover, the opinion

---

[4] We reject defendant's efforts to transform this question of state evidentiary law into a violation of the federal Constitution subject to the more stringent standard of prejudice.

could not possibly be prejudicial where both witnesses *themselves* explained that they were at risk of retaliation for their testimony. Again, contrary to defendant's intimations, the captain did not offer an express opinion that the witnesses were being truthful on this basis.

Finally, the captain's description of the victim's lack of knowledge of the identity of his fellow inmates as "strange" is not any sort of opinion testimony. He was aware from personal knowledge that the victim was in contact with the other inmates, and thus was entitled to express his personal opinion about the plausibility of this aspect of the victim's testimony.

## 2.0 Striking the Guard's Testimony Was Harmless

During the testimony of the guard who responded to the incident, on cross-examination he noted that a Taser had been used on defendant's cellmate after the cellmate was extracted from the victim's cell. The prosecutor objected that this was irrelevant and asked that the testimony be stricken. The trial court sustained the objection and struck the testimony, after which (as noted above) the guard simply testified that the cellmate had not been compliant with orders. Defendant contends the trial court's actions were prejudicially erroneous in light of the defense theory of the case.

This argument is frivolous. The guard nonetheless testified that, unlike defendant, the cellmate had not been compliant with orders. The former gang member testified that he witnessed the use of a Taser on the cellmate. While defendant labels this testimony as "misleading" because it ascribed compliant behavior to the cellmate before the deployment of the Taser, the fact that the Taser was used dispelled any possibility the jury might consider the cellmate to have been compliant (whatever the detriment to the defense theory that might result from that viewpoint). As a result, whatever the necessary evidentiary support this detail about the Taser (or noncompliance) provided for the largely speculative defense theory, it was in fact before the jury. The trial court's actions

in sustaining the objection and striking the guard's testimony therefore could not have had any possible effect on the outcome of this case.

## 3.0 The Error in Failing to Instruct on Expert Testimony Is Harmless

It is not disputed that a trial court has a duty to employ the pattern instruction on expert opinions sua sponte. (Pen. Code, § 1127b;[5] *People v. Lynch* (1971) 14 Cal.App.3d 602, 609 (*Lynch*).) The trial court in the present case did not.

The failure to instruct on the weight of expert opinion is not prejudicial unless we determine it is reasonably probable that a properly instructed jury would have rendered a verdict more favorable to defendant. (*People v. Reeder* (1976) 65 Cal.App.3d 235, 241-243 (*Reeder*); *Lynch*, *supra*, 14 Cal.App.3d at pp. 609-610.) Defendant argues at length that the lack of the pattern instruction prejudiced him. He claims the captain's opinions were "essential to enhance and bolster the otherwise highly questionable testimony of" the cellmate and the former gang member.[6]

However, as in *Lynch*, the jury was otherwise instructed that it was the exclusive judge of the facts in determining what happened and in deciding whether a witness was credible, and it was also given a lengthy list of factors to consider in judging whether a witness was credible. Nothing in the instructions or the arguments of counsel indicated the jury was to abdicate these duties in favor of expert opinion. This is not a case such as *Reeder* where a false aura of reliability in the absence of the instruction could be imputed to the suspect science underlying polygraphs through the testimony of polygraph "experts," when the sole issue was whether or not a rape took place (the sole evidence

---

[5] The substance of the statutory mandate for the instruction advises the jury that it may rely on expert opinions on disputed issues, but it is not bound to agree with the opinion and may disregard it if the jury finds it to be unreasonable.

[6] We do not find the rest of the expert's explanations of gang functioning to which defendant adverts in his brief to be material to the determination of defendant's guilt.

being the conflicting accounts of the victim and defendant). Rather, here the two inmates offered both eyewitness and auditory witness to defendant's attack on the victim and threats against the rival inmate, against which weighed *only* the victim's feigned lack of recollection and defense counsel's speculations about an effort to make defendant a "patsy." The jury was fully aware that these witnesses were criminals and gang members, and—at least in the case of the cellmate—an accomplice who was benefitting with a reduced sentence for his cooperation with the prosecution. The jury was also aware that both witnesses were testifying at risk of their personal safety, in the case of the former gang member without any apparent offsetting benefit. In short, on review of the record as a whole, we are not convinced it is reasonably probable that a jury would have found in defendant's favor had it been expressly instructed that it was not obligated to agree with expert opinion.

**4.0 The Instructions on Failure to Appear Are Inadequate**

All we need note in connection with this count is that on October 28, 2013, in a Tehama County case involving transportation of a controlled substance that is not part of the present appeal, defendant was ordered to appear personally. When he failed to appear, the trial court issued a bench warrant for his arrest. He ultimately surrendered in December 2013, and was remanded to jail (where the above attack on the inmate soon followed).

The only instruction the trial court included for this count (count IX) was in what it termed the "charging instruction." Thus, in addition to the other counts in the information, the court reiterated for the jury that as to this count the information alleged "defendant, on . . . October 28th, 2013, . . . was a person who was charged with the commission of a felony . . . and was [OR] released from custody . . . , and who did willfully and unlawfully fail to appear as required . . . in order to evade the process of" the Tehama County Superior Court. *Unlike* the remainder of the offenses, the trial court

9

did not include a separate instruction that expressly recited what the prosecution must prove to establish guilt of the charged offense. The court did instruct that failure to appear was a crime of specific intent; however, this instruction told the jury that the *particular* specific intent required for failure to appear would be "explained in the instruction for that crime," which did not exist.

As we have noted, the pattern jury instructions do not include any for the crime of failure to appear. (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1411, fn. 4.) In *Carroll*, the trial court *did* fashion an instruction that expressly told the jury the offense required the prosecution to prove the elements specified in the statute, including the specific intent to evade the process of the court. (We did not address the adequacy of this instruction (*id*. at p. 1412, fn. 5).)

The People contend defendant has forfeited this argument. This disregards the "sua sponte" status of instructions on the elements of an offense. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.)

The People take the tack that the jury would somehow discern that the allegations of the information, coupled with a designation of the offense as requiring an unspecified specific intent, amounted to the elements necessary to prove defendant's guilt. However, in attempting to assess how a jury interpreted ambiguous instructions, it is proper for us to consult the arguments of counsel. (*Middleton v. McNeil* (2004) 541 U.S. 433, 438 [158 L.Ed.2d 701]; *People v. Kelly* (1992) 1 Cal.4th 495, 526-527.) The prosecutor in both opening argument and his rebuttal expressly told the jury "all that is required" is proof that defendant failed to be present in court when required, without making any reference to the necessary mental state. Defense counsel, after noting he had stipulated to the fact defendant was not present in court for that case, then stated, "I submit to you I am not arguing about [this count]." Accordingly, we do not have any way to confirm that the

10

jury considered any of the other factual elements of the statute, or that defendant willfully intended to evade the process of the court.

We therefore reverse defendant's conviction for failure to appear (case No. NCR89616—count IX). Should the People find it worth their while to retry defendant for this 16-month component of a sentence of over 34 years, they may do so.

## 5.0 The Instruction on Use of Felony Convictions for Credibility Is Immaterial

Defendant did not testify, nor was the truth of any extrajudicial statement of his at issue. The trial court nonetheless included the pattern limiting instructions that the felony conviction to which defendant had stipulated for purposes of the charges of unlawful firearm and ammunition possession could be considered only for the purposes of establishing his status as a felon *or* assessing his credibility. (CALCRIM Nos. 2511, 2591.) As the People concede, the limiting instruction on credibility was not relevant in the circumstances of the present case. (*People v. Meredith* (2009) 174 Cal.App.4th 1257, 1263.) Putting aside whether defendant has forfeited the argument because he did not propose a modification of the pattern instructions to omit the irrelevant material (*People v. Lee* (2011) 51 Cal.4th 620, 638 [defense counsel must request clarification of accurate statement of law]), we disagree with his premise that the jury would have used the irrelevant limiting instruction as license to consider his prior conviction as evidence of his criminal disposition.

"It has been held that the giving of inapplicable instructions, correct in the abstract, is not ground for a reversal." (*People v. Boggs* (1936) 12 Cal.2d 27, 37; accord, *People v. Cross* (2008) 45 Cal.4th 58, 67 (*Cross*) [technical error not warranting reversal in most cases]; see *People v. Lee* (1999) 20 Cal.4th 47, 57 [in the absence of a showing of prejudice, may not complain of correct but inapplicable instruction].)

11

Under federal and state law, defendant must establish a *reasonable likelihood* that a *reasonable juror* would have interpreted the instruction in the erroneous manner he posits. (*Boyde v. California* (1990) 494 U.S. 370, 378, 380 [108 L.Ed.2d 316]; *People v. Williams* (2013) 56 Cal.4th 630, 688; *Cross*, *supra*, 45 Cal.4th at pp. 67-68.)

The jury in the present case received the standard instructions that some instructions might not apply to the facts as the jury determined them, and that in evaluating witnesses generally, the jury could consider a felony conviction only for the purpose of evaluating the credibility *of the testimony* of the witness. A reasonable juror would thus correlate the reference to defendant's credibility in the challenged limiting instructions as referring to the credibility of any *testimony* of defendant, and in correlation with the other instruction realize that this limiting instruction did not have any application to the case. We do not find any reasonable possibility that a juror instead would fashion license to consider criminal propensity out of thin air. We reject this argument.

**6.0  The Trial Court Improperly Imposed Multiple On-bail Enhancements**

The trial court imposed two-year enhancements (Pen. Code, § 12022.1) for committing an offense while on bail on *all* counts not involving the attack in the jail. Three of these were applied to the base terms consecutively (cases No. NCR89078—count V; No. NCR89077—count VI; and No. NCR89616—count IX); the court stayed the other three along with the convictions to which they applied (pursuant to Pen. Code, § 654).

An on-bail enhancement is based on the nature of the offender as a recidivist, not the conduct of the underlying offense. (*People v. McClanahan* (1992) 3 Cal.4th 860, 868-869, 870-871; *People v. Anderson* (1995) 35 Cal.App.4th 587, 593.) As a result, a trial court may impose only one such enhancement in sentencing a defendant on multiple convictions. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 376-377.) The People correctly concede the point.

12

The issue is moot with respect to the conviction for failure to appear (case No. NCR89616—count IX), which we reverse.  We will stay the enhancement imposed on count VI (case No. NCR89077—unlawful possession of a firearm).

## DISPOSITION

Count IX is reversed, which the People may elect to retry within 30 days of the issuance of our remittitur.  The on-bail enhancement for count VI is stayed.  Otherwise, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a certified copy to the Department of Corrections and Rehabilitation.


　　　　　　　　　　　　　　　BUTZ　　　　　　, J.


We concur:


　　　　HULL　　　　　, Acting P. J.


　　　　DUARTE　　　, J.


13