[Crim. No. 1341. Fourth Dist. Apr. 14, 1958.]

THE PEOPLE, Respondent, v. JOHN EDWARD
LINDSEY, Appellant.

John C. Thompson, under appointment by the District
Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and John A. Van-
derlans, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the
crime of child stealing in violation of section 278 of the Penal
Code. A jury found him guilty as charged. He was sentenced
to state prison and he has appealed from the judgment.

The appellant lived next door to a Mrs. Weslasky at Santee
from January, 1956, until he left his wife and children and

went away in the latter part of April, 1956. When Mrs. Weslasky went to work on the morning of May 9, 1956, her daughter Rosemary, aged 13 years, was in bed. When she returned, about 4 p. m., she found a note in Rosemary's writing reading in part "I have went for good. Don't look for me. I am in good care." The records of Western Union in San Diego disclosed that a telegram was filed by the appellant in Barstow at 7:16 a. m. on May 9 ordering payment of $10 to Rosemary, and that it was paid at 9:30 that morning. Rosemary had not been found up to the time the case went to trial on June 26, 1957. It appears, however, that at the time the appellant's request for probation was heard she had been located through his cooperation.

A witness who lived four miles west of Barstow testified that the appellant and Rosemary drove up to a trailer which was near her home on May 14; that the trailer had been there before; that this was a "fairly isolated place" about four miles from town; that she saw the appellant and Rosemary working in the yard around the trailer during the next two days; that Rosemary came over to her home on the morning of May 16 and then had on an engagement ring and a wedding ring; that her daughter stayed with Rosemary in the trailer on the night of May 16 and that she did not see Rosemary after May 17. The daughter of this witness testified that she saw Rosemary and the appellant working in the yard of the trailer on May 16; that when she stayed with her on the night of the 16th, Rosemary had on a wedding ring and an engagement ring and she showed her the box they had come in; that this was the appellant's trailer; and that it had been there two or three weeks before that.

Another witness testified that she saw the appellant and Rosemary at the trailer on a couple of days; that Rosemary stayed there about three days; and that a car came in one night and she wasn't there after that. Another witness testified that he saw Rosemary in front of the trailer three different times; that on two occasions she and the appellant were together, doing a little yard work; that about 10 o'clock on the night of May 17 he saw an automobile drive up to the trailer, where it remained about 20 minutes and then departed; that this car looked like the car he had seen the appellant drive; that when the car drove off there were no lights on in the trailer; and that Rosemary was not at the trailer after that.

An automobile dealer in San Bernardino testified that he sold the appellant a new car on June 8 or June 9; that Rose-

mary was with the appellant at that time; that he asked the appellant who Rosemary was and the appellant answered that she was his wife and that he had divorced his other wife. An automobile mechanic at the same agency testified that he saw Rosemary with the appellant two or three or four weeks later when the appellant brought the new car in to have the clock fixed; that he then noticed that Rosemary had a wedding ring on; and that Rosemary left with the appellant.

A special agent for the F.B.I. testified that on July 12 the appellant told him that the last time he had seen Rosemary was on May 7 in Santee; that he had 'phoned Rosemary from Barstow telling her that he was sending her $10 by Western Union; that he sent the money on the same day; that he left San Diego on May 9 and drove to Las Vegas, where he remained four days and then returned to Escondido; that Rosemary called him from Boulder City on May 20; and that he tried to call her but was unable to locate her.

A deputy sheriff testified that in a conversation with the appellant on July 31 the appellant told him that he had not seen Rosemary since May 8; that Rosemary had called him in Escondido on May 20 and he had tried to locate her; and that he had not given Rosemary any money. He also testified that in another conversation about a week later the appellant told him that he had not talked with Rosemary on May 20; that he had had a telephone conversation with her on May 9 and had sent her $10; and that he had previously denied sending her any money because he did not want to become involved in the case. A criminal investigator for the Marine Corps testified that he talked with appellant on May 21, 1956, and that the appellant told him that he knew nothing as to Rosemary's whereabouts.

 Appellant's sole contention is that the evidence was not sufficient to sustain the verdict because there was no evidence to show that he had any intention of detaining the child. It is argued that it is not enough, under the statute, to show an intent to take or entice the child away, but that such intent must be accompanied by an intent to detain such child from its parent; that while this presents a question of fact to be proven like any other fact from the acts and conduct of the parties, there was no evidence here to show any intent on his part to hinder, delay or detain Rosemary in any way; that if Rosemary willingly stayed with the appellant, she was not detained; and that there was an entire

absence of any evidence to show that she was delayed, hindered or detained by him.

It is contended that this case is similar to the case of *People* v. *Black*, 147 Cal. 426 [81 P. 1099], and that the reasoning of that case is applicable here. We see little similarity between the facts in this case and those in the Black case. In that case the defendant persuaded two girls, who were determined to leave home and go to San Francisco, to go to a summer resort about 11 miles from their home. This resort was conducted by a respectable family, and it was understood that the girls should leave there whenever they wished to do so. That same night he told an officer, who asked him what he had done with the girls, where he had taken them. There was no evidence that he made any effort to detain the girls, and no evidence of any improper relations between him and either of them. The evidence indicated that he was not prompted by any motive other than a wish to keep the girls from going to San Francisco at that time. The girls could have left the summer resort at any time on a bus which passed there daily, and the defendant was preparing to take the girls home at their request when he was arrested.

In the instant case the appellant had a telephone conversation with Rosemary and wired her a $10 money order on the day of her departure. Shortly thereafter he and Rosemary were seen together over a period of several days on the premises occupied by his house trailer near Barstow. This was an isolated place about 200 miles from Rosemary's home. During that period Rosemary was wearing a wedding ring. About three weeks later Rosemary and appellant were together in San Bernardino, at which time the appellant said that Rosemary was his wife. Several weeks later Rosemary was again with the appellant in San Bernardino and was still wearing a wedding ring. The appellant told conflicting stories to the officers about what he had done in this connection and in May and twice in July, when questioned by the officers, he denied that he had seen Rosemary after May 9 or that he knew where she was. The appellant did not take the stand at the trial, and the undisputed evidence is not questioned except as to its legal effect.

The evidence with the inferences which could reasonably be drawn therefrom sufficiently supports the verdict and judgment. (*People* v. *Simmons*, 12 Cal.App.2d 329 [55 P.2d 297]; *People* v. *Smith*, 17 Cal.App.2d 468 [62 P.2d 436]; *People* v. *Moore*, 67 Cal.App.2d 789 [155 P.2d 403].) There was ample

evidence of concealment and, aside from other considerations, keeping this girl with him under a claim of marriage over a period of many weeks is sufficient evidence of his intent with respect to detaining her from her mother.

Judgment affirmed.

Griffin, J., and Mussell, J., concurred.